## LOFTIS v. LOFTIS.

### (*Nashville.*      January 10, 1895.)

1. GUARDIAN AD LITEM.      *Has right of appeal.*

    The guardian *ad litem*, and next friend, of a minor has a right to appeal "whenever, in his opinion, it is necessary to protect the minor's interests." (*Post, p. 237.*)

2. APPEAL.      *Brings up entire case, when.*

    The administrator's broad appeal from a decree settling the rights of the parties and ordering sale of realty in a chancery cause brought by him to administer and settle up an insolvent estate, brings up for review that part of the decree denying homestead to the infant defendants, without appeal by them. (*Post, p. 237.*)

3. RESULTING TRUST.      *Not established, when.*

    An oral agreement by the purchaser of land for a lien or charge thereon in favor of his wife for a part of the purchase price furnished by her, until repayment of the amount with interest, creates no resulting trust in her favor as against her husband's creditors.      (*Post, pp. 237–239.*)

4. INSOLVENT ESTATE.      *Year's support not paid out of proceeds of realty.*

    An amount set apart by the County Court, to be paid in money as year's support for the widow, cannot be proved as a debt against the husband's estate, to be paid out of the proceeds of the realty, even where there are no personal assets to pay it and the estate is insolvent.      (*Post, pp. 239, 240.*)

    Code construed:      §§ 3125, 3126 (M. & V.);      §§ 2285, 2286 (T. & S.).

    Cases cited and approved:      Rice v. Hunt, 7 Lea, 33;      Turner v. Fisher, 4 Sneed, 211;      Bayless v. Bayless, 4 Cold., 359;      Rocco v. Cicalla, 12 Heis., 508;      Bell v. Hunter, 3 King's Dig., 5314, 5315.

5. SAME.      *Funeral expenses refunded to administrator out of proceeds of realty.*

    Where the administrator of an insolvent estate has paid on funeral expenses an amount in excess of the personal assets, the

same will be refunded to him out of the proceeds of the realty in preference to all debts that are not specific liens thereon. (*Post, p. 240.*)

6. SAME. *Compensation of administrator and his attorneys.*

Reasonable compensation will be allowed the administrator and his attorneys for services necessarily rendered in obtaining sale of lands of an insolvent estate for payment of debts, and same will be paid as a preferred claim out of the proceeds of the realty when there is no personalty, or it has been exhausted. Such compensation should be fixed with reference to the entire estate and services. (*Post, pp. 240, 241.*)

Case cited and distinguished: Loague *v.* Brennan, 86 Tenn., 634.

7. HOMESTEAD. *Its priority over debt for borrowed money.*

Homestead of widow and children prevails over a debt of the decedent for money borrowed by him of a third person to pay off the purchase price of the lands in which the homestead is claimed, though secured by the husband's mortgage thereon in which the wife did not join. (*Post, pp. 241–245.*)

Constitution construed; Art. XI., § 1.

Code construed: § 2935 (M. & V.).

Cases cited and approved: Gray *v.* Baird, 4 Lea, 212; Bently *v.* Jordan, 3 Lea, 353; 99 Am. Dec., 574; 85 N. C., 93; 88 N. C., 234; 6 Braden (Ill.), 517; 100 Ill., 362; 39 Am. St. Rep., 339; 50 Ill., 521.

Cited and overruled: Guinn *v.* Spurgin, 1 Lea, 228.

8. SAME. *Liberal construction of statutes allowed.*

Doctrine reaffirmed that statutes providing for homestead are liberally construed in favor of that right. (*Post, p. 241.*)

Case cited and approved; Jackson *v.* Shelton, 89 Tenn., 82.

---

FROM JACKSON.

---

Appeal from the Chancery Court of Jackson County. B. M. WEBB, Ch.

Loftis *v.* Loftis.

W. B. & M. G. Butler, Geo. H. Morgan, and John A. Pitts for Loftis.

Murray & Son, M. B. Young, and J. T. Anderson for Brooks.

B. A. Butler, *Guardian ad Litem.*

Wilkes, J.   There is a multiplicity of pleadings in these consolidated causes, which it is not necessary to notice critically.   The cause as finally presented is a proceeding to wind up the estate of H. P. Loftis as an insolvent estate, to sell his lands for the payment of his debts, to declare the rights of his widow and children and the creditors of the estate, and fix their priorities *inter sese* in the assets of the estate, consisting now entirely of the proceeds of real estate, a small amount of personal property, less than $100, having already been consumed in the payment of burial expenses.

It is made to appear in the record that, prior to the filing of the bills in this cause, by a proceeding in the County Court of Jackson County, dower and homestead were assigned to the widow of the intestate, and the amount in money of her year's support fixed; but only a few dollars had been paid by the administrator upon the latter, leaving $264.44 unpaid on this account.

It further appears that the administrator had paid out all the personal assets in his hands—a small amount—on the year's support, to wit, $17, and

the remainder on the burial expenses, and had used of his own individual funds, for the latter purpose, $29.28, which had not been repaid to him.

It further appears that intestate in his lifetime bought a tract of land—the same now sought to be sold—from one Kirkpatrick for about $3,000; that, in order to finish paying for the same, he borrowed $300 from his wife out of her separate property, and from R. V. Brooks about $1,000, which he used in paying off the purchase money. He executed his notes to Brooks for the amount borrowed from him, and, to secure the same, gave a trust deed upon the land he had bought—the same now in controversy—and the deed of trust recites upon its face that the notes are executed for money with which the purchaser paid part of the purchase money for the land thus conveyed in trust. It contains the usual power of sale in case of default. This trust deed was not signed by the wife, but was regularly acknowledged by the husband and registered. For the $300 loaned by the intestate's wife no note was given; but the fact of the loan, and that it was her separate estate, derived from a sale of her father's land for division among his heirs, is abundantly shown. The agreement under which this $300 was furnished and used is somewhat indefinite and uncertain under the pleadings and proof. The widow died pending the litigation, and the question of her dower rights is thus eliminated from the controversy. She left minor children, who are

presumably in possession of the homestead, though this does not definitely appear; and these minor children insist upon their right to homestead, under the statute, in the land sought to be sold.

J. M. Loftis, the administrator of the husband, was also made administrator of the wife, and he is before the Court in both capacities.

The Chancellor, upon the hearing, held that the widow had established a right to a resulting trust in the tract of land to the extent of the $300, contributed by her to be used in paying for it, and that, by virtue of this resulting trust and interest thus acquired in the land by her, she became tenant in common with her husband in the land, and she and her children were not, therefore, entitled to homestead in the same, but she was entitled to have the $300, and interest, paid back to her out of the proceeds of the land when sold. He also held that, the personal property of the estate having been exhausted, the land should be sold, and, after paying the widow's demands, as above shown, the mortgage debt should be paid, and the remainder distributed *pro rata* among the general creditors of the estate. A reference was had to report the debts against the estate, and the report, as made, did not embrace the balance of the year's allowance to the widow, nor the amount advanced by the administrator out of his own funds, as valid debts against the estate, and refused the administrator any allowance for his services.

The cause is here by appeal on the part of the

Loftis *v.* Loftis.

administrator. An appeal was prayed for the minors, by their guardian *ad litem*, acting also as their next friend, but this appeal was, by the Court below, refused, on the ground that a guardian *ad litem* had no right of appeal. In this the Court erred. A guardian *ad litem* and next friend of minors has a right to appeal whenever, in his discretion, it is necessary to protect the interest of his wards, to the same extent as any other person may upon tendering proper bond, which was done in this case. The guardian *ad litem* excepted to the action of the Court, and, while his bond for appeal is copied into the record, there is no bill of exceptions making it part of the record, and the transcript is not filed for writ of error. It appears, also, that the minors attempted to appeal in proper person, and a bond is executed for them with security. While the appeal prayed by and for them is not regularly and properly perfected, and the case is not properly in this Court because of such attempt to appeal, still there is a broad appeal by the administrator and creditors of the estate, raising the question of the rights of all parties in the estate, including the minors, and their rights can properly be adjudicated under this record.

We think the Chancellor was in error in holding that the wife of the intestate acquired an interest in the lands of her husband, under the idea and doctrine of a resulting trust, to the extent of the $300 contributed by her to the payment of the purchase

money of the land.   Neither the pleadings on the part of the wife nor the proof in the cause make out a case of resulting trust in the wife.

In her cross bill, attempting to set up this trust, she says the agreement, when she furnished the $300, was that the land, to that extent, should be hers; but, again, she adds that it was the agreement that she was to have a lien upon the land to the extent of the money furnished by her, superior to the rights of all others, as it was for borrowed money.   She prays that the land be sold, and $300 and interest be repaid to her, and, if this cannot be done, then that a resulting trust be declared to that extent in the land, and her right to recover to that extent be declared superior to the rights of all others.

The proof on this branch of the case is full and satisfactory as to the fact that she furnished the money, and that it was hers, and was used in paying off the purchase money, but it is indefinite as to the agreement under which it was furnished and to be used.

Her· brother, H. H. Johnson, from whom she received the $300, states that the agreement between the husband and wife was that he would pay her back out of the land, and that the land should stand good for the money she put into it, and that, in any event, she should not lose the money furnished by her and put into the land.

John M. Loftis, one of the intestate's brothers,

states that the agreement was that the land should stand good for the money, and that she should have her interest in the land.

J. M. Loftis, another brother, and the administrator, states that it was agreed that she was to have her money out of the land, and hold her interest in the land until it was paid back to her.

There is no proof of any agreement that any particular portion of the land should be hers, nor is there any evidence of any agreement that the title to the land, or any part of the same, should be taken in her name.

Under these pleadings and proof, we do not think the widow establishes any resulting trust, but merely shows an oral agreement for a lien or charge upon the land in her favor until the amount contributed by her, with interest, could be repaid to her, and it was not contemplated that her money was to remain invested in the land permanently, nor that she was to have any specific interest in or part of the land. This oral agreement for a charge or lien upon the land, fixed no lien in her favor as against the husband's mortgage or general creditors, but her administrator is entitled to prove the same as a general debt against the estate without lien or priority.

The Chancellor was correct in holding that the amount set apart by the County Court, to be paid in money, as a year's support for the widow, could not be proven as a debt to be paid out of the pro-

ceeds of the real estate, which are now the only as-
sets of the estate. The year's support can only be
set apart out of money or other personal property,
choses in action, etc. Code (M. & V. Comp.),
§§ 3125, 3126. And the property set aside must be
actually on hand or due. Code, § 3126; *Rice* v.
*Hunt*, 7 Lea, 33; *Turner* v. *Fisher*, 4 Sneed, 211.
It cannot be, for so much money, charged on the
assets of the estate generally. *Bayless* v. *Bayless*,
4 Cold., 359; *Rocco* v. *Cicalla*, 12 Heis., 508.
And it is not chargeable on the real estate of
the deceased. *Bell* v. *Hunter*, 3 King's Digest,
§§ 5314, 5315.

The Court was in error in not allowing the
amount paid out by the administrator on the burial
expenses, out of his own means, as a debt against
the estate, and in not making it, under the facts,
a preferred debt, after such debts as are specific
liens on the land. He was also in error in not
allowing the administrator compensation for his serv-
ices in a reasonable amount. In case of insolvent
estates, when it becomes necessary for the adminis-
trator to sell lands for the payment of debts, he
should have a reasonable allowance for his services,
which are sometimes onerous and always more or
less charged with responsibility and labor; and this
is true also as to such reasonable attorneys' fees
as may be necessarily incurred in selling the lands
and paying out the proceeds, and these amounts are
also chargeable on the proceeds of the real estate,

when the personal property is exhausted or there was none in the first instance. Such compensation and fees should be preferred when the sale is caused by the administrator, and the entire estate and service should be taken into consideration in fixing the amount. This is not the case of a public administrator, as was the case of *Loague* v. *Brennan*, 2 Pickle, 634, and there is no conflict with it.

The question of the right of the widow and minor children to homestead is one of difficulty, on which there is a conflict of authority in the several States, and in our own State. It has been held, time and again, that the homestead right must be favored and the statute liberally construed to protect it. *Jackson, Orr & Co.* v. *Shelton*, 5 Pickle, 82, where the authorities are collated. The Constitution provides that "the exemption shall not operate against public taxes nor debts contracted for the purchase money of such homestead or improvements thereon." Art. XI., Sec. 2. The statute, M. & V. Code, § 2935, provides that it shall not be exempt from sale for the payment of public taxes legally assessed upon it, or from sale for the satisfaction of any debt or liability contracted for its purchase or legally incurred for improvements made thereon. The difficult and important question is presented in this case, whether money borrowed from a third person to pay off the purchase money due the original vendor or his assignee is a debt or liability contracted for the purchase in the sense of the stat-

ute and constitutional provision. The conflict of authority upon this point in other States is forcibly presented in the text-books. See Waples on Homestead and Exemptions, pp. 337–346; Thompson on Homestead and Exemptions, Secs. 338–347. See also *Magee* v. *Magee*, 99 Am. Dec., 574, note.

It is said, in Thompson on Homesteads, that it is impossible to extract any consistent rule from the cases; and in Waples on Homestead it is said that the holding in each State is largely dependent on the exact language of the statutory provision. It can serve us but little purpose to examine the authorities of the different States in order to fix the rule in our own. After all, the matter resting wholly upon constitutional and statutory provisions, the rule to be adopted is more properly one of public policy under our statute than of conformity to the decisions of other States.

We think there is a marked difference between purchase money and money borrowed to pay off purchase money, and that a debt or liability contracted for the purchase of land means a debt which has for its immediate and original consideration such purchase. So long as the original consideration of the debt remains—the purchase of land—the homestead cannot prevail as against it, even though the debt be assigned or renewed or extended. *Bently* v. *Jordan*, 3 Lea, 353; *Smith* v. *High*, 85 N. C., 93; *Fox* v. *Brooks*, 88 N. C., 234; *Kimble* v. *Essworthy*, 6 Braden (Ill.), 517; *Williams* v. *Jones*,

100 Ill., 362. But when the original purchase money is paid by the use of other money borrowed from a third person for that purpose, the consideration of the debt is no longer purchase money, but borrowed money, and the debt incurred for borrowed money is not superior to the homestead. If we hold that money borrowed to pay off purchase money must be held superior to the homestead, then, it logically follows that money borrowed to pay off such borrowed money must also be held superior, and this rule must continue through as many removes and borrowing transactions as the needy debtor may be forced to make through a series of years, until he is able to discharge all obligations based upon the original borrowing. This would not be a sound rule, nor in accord with the trend of our decisions favoring and protecting the homestead. The priority extended to debts contracted for the purchase money of land is not the same as the vendor's lien for purchase money, and is in nowise dependent on the question whether the vendor has retained such lien. It is a separate lien charge or incumbrance, arising out of the statute and constitutional provisions, and may be enforced by judgment and execution at law, irrespective of the vendor's lien. The party who pays off such purchase money is not thereby substituted to the priority in favor of the original debt, and, if he secure himself by mortgage, his rights will depend upon the mortgage, and not upon the original transaction.

It may be said that it is unjust to allow the purchaser to claim the homestead when he has not, in fact, paid for the same, but it is no more unjust than it is to allow the purchaser of any other property, real or personal, to retain the same when it has not been paid for. Besides, it cannot, in our view, be said that the debt incurred for the purchase money is unpaid, when it has been discharged by the creation of a new obligation, based primarily upon another consideration.

When money is borrowed by the purchaser after the purchase has been made, and by him paid in discharge of the original purchase money, it is no longer a debt incurred for the purchase, for that is paid, but is for borrowed money, and it has no priority as against the homestead because of its use in paying off purchase money. *Eyster* v. *Hathaway*, 50 Ill., 521; *Magee* v. *Magee*, 99 Am. Dec., 574; *Druse* v. *Myers*, 39 Am. State Rep., 339; Thompson on Homesteads, Secs. 342, 343.

In accord with this view is our case of *Gray* v. *Baird*, 4 Lea, 212, and opposed to it is the case of *Guinn* v. *Spurgin*, 1 Lea, 228. The latter case cannot be sustained upon the ground upon which it is placed, and it is overruled. Whether that case could be sustained upon the idea that in effect Spurgin became the purchaser from Bowers and sold to Guinn, so that the debt from Guinn to Spurgin was really a debt contracted for the purchase money, we need not consider, as the decision is not rested upon that idea.

We are of opinion that neither the mortgage debt to Brooks, nor the $300 debt to Mrs. Loftis, has priority over the homestead right of the widow and minor children in the land in controversy in this case. The result is, the Chancellor's decree must be reversed and modified so as to conform to this holding.

The cause will be remanded to the Court below, to the end that the land may be sold, subject to the homestead right of the minors, or otherwise as the Court may direct, so as to protect the minors in their homestead rights as superior to all other claims. Out of the proceeds will next be paid the costs which have accrued, and may accrue, in the Court below and in this Court; next, the mortgage debt to Brooks, with proper interest; then the amount advanced by the administrator, out of his own means, to pay burial expenses, with proper interest; next, reasonable compensation to the administrator for his services, as well as reasonable attorneys' fees for him and for the guardian *ad litem* of the minors, and then the remainder *pro rata* among the general creditors of the estate, including the $300 debt of the administrator of the widow, and interest, and such other debts as may be properly proven, but excluding the balance of the year's support to the widow, which cannot be allowed out of the proceeds of the land.

The costs of this Court and the Court below will be paid out of the proceeds of sale of the lands.