SHEAFER *et al. v.* MITCHELL *et al.*

(*Knoxville.*  September Term, 1902.)

1. **LAND LAW.  Grant and entry.  Hiatus.  Case in judgment.**

R. & J. made a special entry, but did not obtain their grant until after two hiatuses intervened.  E. & F. made two younger entries on same land and obtained two grants *before* said hiatuses.

HELD:  That E. & F., claiming under junior entries and senior grants issued *before*, have superior title to R. & J., claiming under senior entry and junior grant issued *after* the hiatuses.  (*Post, pp.* 194-199.)

Cases cited and approved:  Williamson *v.* Throop, 11 Hum., 265; Blevins *v.* Crew, 3 Sneed, 152; Gass *v.* Waterhouse, 61 S. W. Rep., 452; Cowan *v.* Hatcher, 48 S. W. Rep., 328.

Cited and distinguished:  Tipton *v.* Sanders, 2 Head, 690; Sampson *v.* Taylor, 1 Sneed, 600; Heneger *v.* Matthews & Co., 88 Tenn., 132.

2. **TAX DEED.  Recitals of prima facie evidence, when.**

A tax deed, to be valid under the acts of 1835, ch. 15, should recite (*a*) the consideration paid; (*b*) a sufficient description of the lands; (*c*) the judgment upon which the sale was made; (*d*) the date of judgment and court where rendered; (*e*) the fact of legal notice having been given, and (*f*) sale of property and date thereof.  Where such recitals appear, they constitute *prima facie* evidence of such facts, and the deed is valid evidence of title in any court of law or equity, and it is immaterial whether the sheriff who made the sale, or his successor (thirteen years thereafter), executed the deed.  (*Post, pp.* 203-209.)

Acts cited and construed:  Acts of 1901, ch. 8; 1809, ch. 84; 1835, ch. 15; 1843-4, ch. 92; 1847-8, ch. 147; 1849-50, ch. 102.

Cases cited and approved:  Bates *v.* Sullivan, 3 Head, 633; Tharp *v.* Hart, 2 Sneed, 572; Polk *v.* Mitchell, 85 Tenn., 634.

Cited and distinguished:  Allen *v.* Moss, 2 Shannon's Cases, 372.

3. **SAME. Sufficient description.**

Where a deed describes land as the "Shady Tract" merely, but refers for particular description to other deeds of record containing accurate description of same, it is not void for insufficient description, but is a valid conveyance. (*Post, pp.* 192-193.)

Authorities cited and approved: 2 Pingrey on Real Property, sec. 1375; 4 Am. & Eng. Ency. Law (2d Ed.), 759.

4. **SAME. Certain recitals in, not required when.**

It is not necessary to show in the face of the deed that the several tracts of land described therein were separately sold. The fact that the sale was made in bulk, and not separately, might be set up in defense on the trial, where the deed is not clear as to how the sale was made, but the fact that it does so recite would not avoid it, if the statutory prerequisites are recited. (*Post, pp.* 211-212, 215.)

Case cited and approved: Brien *v.* Creighton, 2 Shannon's Cases, 211.

5. **SAME. Law in force when deed made controls.**

The validity of a tax deed must be determined by the law in force at time of sale; and, if executed by virtue of such sale, and valid under that law, it can not be affected by subsequent legislation. (*Post, p.* 211.)

Cases cited and approved: Tracy *v.* Reed, 2 L. R. A., 777-9; Richardson *v.* Marshall Co., 100 Tenn., 352; Douglas *v.* County of Pike, 101 U. S., 677; Taylor *v.* Ypsilanti, 105 U. S., 60.

6. **SAME. Lapse of time raises presumption in favor of upholding, when.**

After long lapse of time—thirty-five years in the present case—every reasonable presumption should be indulged to uphold a tax deed; and, especially is this so where the original proprietors, or their privies, have asserted no title, although numerous subsequent conveyances have been made. (*Post, pp.* 210, 215.)

Cases cited: Childress *v.* Harrison, 1 Bax., 411; Gonzales *v.* Ross, 120 U. S., 605; Dodge *v.* Briggs, 37 Fed. Rep., 160; Orton *v.* Nooman, 25 Wis., 672; Thomas *v.* Sitckle, 32 Iowa,

Sheafer v. Mitchell.

71; Howard *v*. Stephenson, 11 Mo., 410; Gage *v*. Bailey, 102 Ill., 11.

Code cited:   Shannon's Code, sec. 3762.

**7. SAME. When void.**

Tax deeds are void (*a*) where several tracts of land are sold as a whole and not separately; (*b*) where the law authorizing such sales is not strictly followed, the proceeding being purely statutory, and (*c*) where the record offered to support the deed varies materially from its recitals. (*Post, pp.* 192, 209.)

Authorities cited and approved:   Cooley on Taxation, 476; Downing *v*. Stephens, 1 Bax., 456; Sampson *v*. Marr, 7 Bax., 490; Blackwell on Tax Titles, 380; Crisman *v*. Johnson, 50 Am. St. Rep., 224; Bomar *v*. Boardman, 3 L. R. A., 787; Polk *v*. Mitchell, 85 Tenn., 634; Ballard *v*. Scruggs, 90 Tenn., 585.

**8. SAME.**

*Query*:   If void, can a defendant, who is a stranger to the title, in an ejectment suit, rely upon this defense to defeat complainant's suit, as he could rely upon any other outstanding title? (*Post, pp.* 215-216.)

Authorities cited:   Freeman on Executions, 985; Lawson *v*. Ry. Co., 10 L. R. A., 269; Harlan *v*. Harlan, 14 Lea, 115.

**9. EXERCISE OF POWER. Presumption as to.**

The presumption of law is in favor of the exercise of power; and, if there be both a legal and an illegal mode of exercising same, the legal method is presumed to have been adopted, in the absence of proof to the contrary. (*Post, p.* 212.)

Cases cited and approved:   Marshall *v*. Stephens, 8 Hum., 159; Wilburn *v*. Spofford, 2 Sneed, 704; Murdock *v*. Leath, 10 Heisk., 188; Crisman *v*. Johnson, 58 Am. St. Rep., 256.

**10. APPEAL. What it presents for adjudication. Questions of law.**

Where the lower court decides a case correctly, but upon an erroneous theory of the law, the supreme court will affirm the holding, but base its decision upon the correct theory; and, where questions of law, not fact, are involved, it is not necessary for all parties to appeal in order to invoke the application of the rule. If one side appeals, it brings up

Sheafer v. Mitchell.

for consideration all questions of law governing the matters in controversy. (*Post, pp.* 193-194.)

Cases cited and approved: Butler *v.* McKenzie, 90 Tenn., 211; Loftis *v.* Loftis, 94 Tenn., 237.

**11. CODE OF 1858. Makers of, and their powers.**
The makers of the Code of 1858 were authorized "to revise and digest" existing statutes, and the supreme court, construing the Code, in doubtful cases, will presume that this was done, and that it was not intended to alter or change them. (*Post, p.* 207.)

Case cited and approved: Bates *v.* Sullivan, 3 Head, 633.

---

FROM JOHNSON.

---

Appeal from the Chancery Court of Johnson County. JOHN P. SMITH, Chancellor.

C. J. ST. JOHN, SHIELDS & MOUNTCASTLE and WEBB, McCLUNG & BAKER, for Sheafer *et al.*

JENKINS, WILSON & COLE and PICKLE & TURNER, for Mitchell *et al.*

*THOMAS CURTIN, Special Judge, delivered the opinion of the Court.

This is an ejectment bill, filed in the chancery court of Johnson county, to recover 200 acres of land, and for an injunction to stay waste.

---

*Syllabus prepared by Special Judge Thomas Curtin, commissioned by Governor McMillan to sit for Mr. Justice Shields, incompetent by reason of being of counsel. Mr. Justice Neil was also incompetent by reason of having participated in the hearing in the court of chancery appeals, and Mr. C. E. Lucky was commissioned by the Governor to sit in his stead.

Sheafer v. Mitchell.

The complainants' title is founded upon two grants issued by the State of Tennessee for 5,000 acres each. Grant No. 21,601 was issued to Wm. Ewing, May 13, 1838, founded on an entry made October 4, 1830; and grant No. 21, 614, issued May 21, 1838, to John H. Fulton, based on an entry made October 4, 1830. The 200-acre tract in controversy lies partly upon each of these 5,000-acre tracts, and the complainants deraign title from the Ewing and Fulton grants.

The defendant, Mitchell, claims the land by virtue of an entry made January 27, 1826, and a grant issued thereon to Asa Reece and B. W. Jenkins, April 26, 1861, and deraignment of title thereunder. Mitchell purchased the land October 7, 1898, and his deed was duly acknowledged and registered October 12, 1898.

The complainants also rely upon adverse possession under color of title for more than seven years. But the court of chancery appeals find as a fact that complainants' possession has not been for a longer period than six years; that they had made leases on the lands some fourteen years before the institution of this suit, though actual possession under these leases is not shown. This finding of fact eliminates the question of possession.

One of the links in the complainants' chain of title is a tax deed from Isaac S. Shoun, sheriff, to Wm. King, dated November 6, 1866, which was acknowledged and registered November 8, 1866, and was executed in pursuance of a sale or sales of the lands

therein described made on the first Monday in July, 1853, by Jas. W. Wright, then sheriff and revenue collector of Johnson county, for taxes due for the year 1852; so that the deed for the lands was not executed by the sheriff who made the sale, but by his successor, some 13 years thereafter.

This deed conveys to Wm. King 10 separate tracts of land, consisting in the aggregate of 50,000 acres, and therefore upon the validity of this conveyance the title to all of these lands may depend; but, as already stated, there are only 200 acres actually involved in this litigation.

The defendant contends that he has the superior title; and further insists that the sheriff's deed upon which complainants rely is absolutely void, for the reasons: (1) That it recites a judgment variant from that which is produced in evidence to support it; (2) that the record offered to support the deed shows that judgments for back taxes were entered against 10 separate tracts of land "for the sum annexed to each, being the amount of taxes thereon for the year 1852," and the court ordered the sale of said tracts as the law directs, but that the sheriff, as shown by the face of the deed, made the sale in bulk, or sold all of the tracts in one parcel or as a whole, and that such a sale is void; (3) that the *venditioni exponas* is not in evidence to support it, and the only evidence of its contents are the recitals of the sheriff's deed, and these indicate that it did not pursue the

judgment; (4) that the deed does not recite that said land was "duly reported;" and (5) that the recitals of a sheriff's deed, made by a successor in office 13 years after the sale, do not afford *prima facie* evidence of the facts recited therein, and especially, it is said, is this the case when the record offered in support of the deed contradicts its recitals; and he claims the recitals must be established *dehors* the record.

The further insistence is that the defendant's title is superior to that of the complainants in this: That the grant under which he claims the land was issued in April 1861, founded on an entry made January 27, 1826; and that, being a special entry, his grant would relate back to the date of the entry, and hence is an older and better title than the two grants upon which complainants rely that were issued in 1838 upon entries made in 1830.

On the other hand, the complainants charge that the statutes under which the tax sale was made in 1853 were Acts 1835, ch. 15, carried into Code 1858, sec. 640, and Acts 1843-44, ch. 92, carried into Code 1858, secs. 627, 628, and that the deed is in strict conformity to the requirements of these acts.

And as to the grant and special entry relied upon by the defendant complainants say that two hiatuses occurred between the date of the entry (January 27, 1826) and the grant (April 26, 1861); that the time limited by the act of 1839 in which to obtain grants

on entries made prior to that date expired November 28, 1841, and the extending act was not passed until November 30, 1841, leaving a gap or chasm of two days.

Act 1847-48, ch. 92, extended the time until the 1st of September, 1849, and by Acts 1849-50, ch. 138, time was further given until September 1, 1851. On November 13, 1851, the time was again extended to March 1, 1854. Hence there were 2 months and 13 days between said acts which were not covered by any extension act.

Moreover, the defendant asserts that, as the entries and grants upon which the complainants rely were made respectively in 1830 and 1838, at a time when the entry under which the defendant claims was valid, therefore the entries and grants of complainants were themselves void. In other words, the contention is that, in order to cut off defendant's entry from his grant, the complainants' entries and grants must have been made and obtained during the period of the hiatus.

And, as to the validity of their tax deed, complainants say that, assuming, for argument, that the deed on its face is voidable, or even void, this defect can only be taken advantage of by suit of the original proprietors or their creditors, and can not be attacked by the defendant, who is a stranger to the title. And also for the reason that in the lower court the defendant only interposed two objections to the deed.

Sheafer  v.  Mitchell.

(1) Because it was executed by the successor of the sheriff who made the sale, and the recitals in the deed do not correspond with the record; (2) because a recital of a successor that an order of sale was issued in April, 1853, and that advertisement was made and notice given as required by law, is not sufficient evidence of the fact, which could only be known by the sheriff who sold the land.

On the hearing the chancellor decreed:   (1) That the entry of Reece and Jenkins, made in 1826, of the 200-acre tract, was destroyed by the hiatus of 1841, and that the Ewing and Fulton grants, relied on by the complainants, constituted the superior title to the lands; (2) that the deed from Isaac S. Shoun, sheriff, to Wm. King, is defective, as it does not show that the said tracts of land were sold separately, but as a whole, and was therefore void, and complainants for this reason failed to connect their title with said grants.   The bill was dismissed, and both sides have appealed.

The court of chancery appeals affirmed the decree of the chancellor, and held:   (1) That the entry made by Reece and Jenkins was lost by the hiatus of 1841; (2) that the Ewing and Fulton grants constitute a superior title to the Reece and Jenkins grant, under which defendant claims; (3) but that the deed from Isaac S. Shoun, sheriff, to Wm. King, was void; "that the deed and record produced in support of it do not show a legal divestiture of the title out of the

parties who owned this land, and the vestiture of it in Wm. King, under whom the complainants claim." The court of chancery appeals state no reason for holding this deed void, but say that the court will prepare supplemental opinion, in which the reasons will be given; but this opinion was not filed.

From the decree of the court of chancery appeals, the complainants have alone appealed, and assigned errors. Only two of these are necessary to be considered, viz.: (1) That the court of chancery appeals erred in holding the deed of Isaac S. Shoun, sheriff, to William King, to be defective, because it did not show that the tracts of land were sold separately; (2) that, if said deed was defective at all, the defect could only be taken advantage of by the parties to the sale, or their privies, and not by the defendant, who was a stranger to the title.

Before considering the assignments of error, we will pass upon a legal question earnestly urged and relied upon as a defense. Complainants insist that, as the sheriff's deed, and the exceptions made thereto before the chancellor and the court of chancery appeals, were not specifically passed upon by either of these courts, but the deed admitted in evidence, and held to be void, not by reason of the specific exceptions, but because the sale of the lands was made in bulk, therefore the objections now urged by the defendant, based upon certain alleged specific defects shown by the record supporting the deed, can not be considered by us, be-

Sheafer v. Mitchell.

cause the defendant has not appealed; and in support of this proposition, *Williams* v. *Kirtland,* 13 Wall., 310 (20 L. Ed., 683); *Gunn* v. *Mason,* 2 Sneed, 645; *Ingram* v. *Smith,* 1 Head, 412; *Bleidorn* v. *Mining Co.,* 89 Tenn. 174 (15 S. W., 737); *Pillow's Heirs* v. *Shannon's Heirs,* 3 Yerg., 508; and *Kerr* v. *Kerr,* 3 Lea, 228, are cited.

These authorities do not seem to be in point. In *Ingram* v. *Smith,* 1 Head, 412, the court says: "Objections made to the reading of evidence and exhibits in the court below must be clear and specific, that the opposite party may have the opportunity to cure the defect, and not be taken by surprise when that opportunity may not be had."

The bill of exceptions in that case showed that the copy of a will was objected to on the trial because (1) "not authenticated according to law," and (2) because "the said paper had not been filed in court according to law." Says the court: "The precise character of the objections is not stated, but in argument it was urged that the certificate of the clerk is insufficient for want of seal, and that the exhibit was filed without one day's notice, as required by chancery practice."

And this court held that the objections were not sufficiently specific. In *Bleidorn* v. *Mining Co.,* 89 Tenn., 189 (15 S. W., 737) it was held that "a paper copied into the transcript will be treated as a part of the record where there is no objection to the admission below, and no assignment upon it in this court." But

these as well as the other authorities cited only relate to mere defects in the papers offered as evidence, and do not involve their validity.

Defendant's contention is that the deed is absolutely void, and that the tax proceedings and the authority exercised under them is purely statutory, and must be strictly pursued. Cooley, Tax'n., 476; *Downing* v. *Stephens,* 1 Baxt. 456; *Sampson* v. *Marr,* 7 Baxt., 490.

And that, if the recitals in the deed, or in the record, upon which the deed is founded, are contrary to law,—as, for example, that the sale was made at the wrong place, or that several tracts of land, assessed to different owners, were sold in bulk,—then the deed is void. Blackw. Tax Titles, 380; *Crisman* v. *Johnson* (Colo. Sup.) 47 Pac. 296 (58 Am. St. Rep., 224); *Barnes* v. *Boardman* (Mass.) 21 N. E., 308, (3 L. R. A., 787); *Polk* v. *Mitchell,* 85 Tenn., 634 (4 S. W., 221); *Ballard* v. *Scruggs,* 90 Tenn., 585 (18 S. W., 259, 25 Am. St. Rep., 703).

Or, if the recitals in the deed vary from the record produced in its support, the deed is void. *Sampson* v. *Marr,* 7 Baxt. 486; *Henderson* v. *Staritt,* 4 Sneed, 470.

We think the law is well settled that, where the defects indicated are shown, they would render such a deed void.

Another contention is that the deed from G. W. Palmer and wife to R. P. Wilson, of March 8, 1894,

Sheafer v. Mitchell.

conveying an interest in the lands in dispute, and hence a part of the complainants' chain of title, was void for want of sufficient description. It is said the land is simply described as the "Shady Tract," and no evidence to prove that it was ever known by this name.

A complete answer to this argument, however plausible, is that the deed itself refers for full description to other deeds of record for this identical land, which contain an accurate description, and will enable the boundary to be ascertained; and this is all the law requires. 2 Pingrey, Real Prop. sec. 1375; 4 Am. & Eng. Enc. Law (2d Ed.) 759.

In order to make and rely upon the foregoing questions, we are of opinion that it was not necessary for the defendant to have appealed from the decree favorable to him, as these were principles of law arising upon the pleadings, and especially upon the deed sought to be attacked; and, if the court of chancery appeals dismissed the bill upon an erroneous view of the law relating to these deeds, or other title papers, and it appeared to us that the instruments were void upon grounds different from those upon which that court dismissed the bill, we would be constrained to sustain the holding upon the correct rule which should have been applied in the determination of the matter. If this could not be done, persons who were successful in the lower courts upon an erroneous view of the law, but who were entitled to recover upon the

application of correct legal principles, would be compelled to appeal from the judgment or decree in their favor in order to enable them to hold the advantage already secured. Suppose in this cause we should find that the sheriff's deed, relied upon, is valid, but that the grants issued to Ewing and Fulton are void, and the grant and entry upon which the defendant relies are good, it would then become our duty to modify the holding of the court of chancery appeals by placing its decision in dismissing the bill upon an entirely different ground; that is, instead of holding the deed void, we would dismiss the bill because the grant to which the deed related, or with which it was sought to be connected, was invalid and conveyed no title.

Without a further discussion of this question, we are clearly of opinion that the present appeal brings before the court for consideration all the foregoing questions relied upon by both sides relating to the controversy. *Loftis* v. *Loftis,* 94 Tenn., 237 (28 S. W., 1091); *Butler* v. *Kinzie,* 90 Tenn., 31 (15 S. W., 1068).

Before considering the complainants' assignments of error, we will take up the questions presented by defendant in support of his contentions, and the authorities to which he refers.

In the case of *Tipton* v. *Sanders,* 2 Head, 690, plaintiff claimed land under a grant issued in 1856, founded on an entry made the 4th day of August, 1849,

Sheafer v. Mitchell.

which purported on its face to be a consolidation of six occupant extension entries, of which plaintiff was assignee, made in October, 1840. The defendant set up a claim to 140 acres of land covered by plaintiff's title, under a grant issued on the 10th of November, 1849, founded on an entry made on the 7th of July, 1847. The circuit judge instructed the jury in that case that the plaintiff's grant was void, so far as it interfered with the grant under which defendant claimed, because there was a hiatus between the Acts of 1849-50 and 1851-52, extending the time for perfecting titles to lands previously entered. And by reason of this intermission, it was assumed by the lower court, that the relation of the plaintiff's grant to the occupant extension entries, on which it was in law founded, was cut off, and thereby supposed that the defendant's younger entry was valid, and the grant founded thereon became an indefeasible title. This court said: "This conclusion is entirely erroneous. The title of plaintiff under his consolidated entry and the grant founded thereon relates to the date of the occupant extension entries, made on the 19th of October, 1840, by force of Act 1846, ch. 80. And, notwithstanding the consolidation entry was not surveyed until the 9th March, 1855, nor grant obtained until 1856, the validity of the title is not impaired. What would have been the result if the defendant's entry had been made during the interval which occurred between the 1st of September and the

13th of November, 1851, we need not stop to inquire. Be this as it may, it is very clear that the effect of the acts of 1851-3, above recited, was to resuscitate the right, and prolong the time for perfecting the plaintiff's title to a period beyond the date of his grant; and it is no less clear that against all persons who acquired no intervening right during such interval the title of the plaintiff is as perfect as if no interval had occurred."

*Henegar* v. *Matthews,* 88 Tenn., 132 (14 S. W., 554) is one of the latest cases decided by this court. That suit involved the title to a large tract of land. The defendants, Matthews & Co., insisted that a hiatus occurred between the entry and grant to Henegar, and that their entries, having been made prior to the hiatus, became by reason of this chasm, the only valid entries. The Henegar entry was made April 27, 1830. By Acts 1829, ch. 89, enterers of land in Hiwassee district were required to obtain grants within nine months. By the subsequent acts of December 9, 1831, October 10, 1833, November 16, 1835, November 27, 1837, the time was extended within which such entries could be lawfully carried into grants. The last act expired November 16, 1839, and the next extension act was not passed until January 25, 1840. So that between November 16, 1839 and January 25, 1840, there was no law under which a grant could be issued upon the Henegar entries. But the act of 1840 revived this right, and under it Henegar obtained a

grant in September, 1841.   The entries of Matthews & Co. were not made during this hiatus, and therefore, says the court, "the case is not governed by that of *Sampson* v. *Taylor,* 1 Sneed, 600."

Judge Lurton, who delivered the opinion of the court, said: "It is, however, very ably argued by counsel that the effect of the chasm was to vest in the younger enterer, whose entries had been made before the hiatus, a vested right, which could not be divested by a subsequent act reviving an elder entry, and extending the time within which such elder entry might pass into a grant.   In support of this position, *Williamson* v. *Throop,* 11 Humph., 265, and *Blevins* v. *Crew,* 3 Sneed, 152, are cited.   These cases are to be distinguished from the one now in consideration, in this:   That both the entries and grants bore date prior to the hiatus, while the grants to Matthews & Co. are subsequent to the chasm, and therefore after the passage of the extension act, under which the grant upon the elder entry issued."

Again, says the court:   "The lands covered by the elder and special entry of Henegar were not subject to the entry at the time they were again entered by Matthews & Co.   These previous entries were unlawfully made, and were nullities.   Did the subsequent hiatus have the effect of validating these junior and unauthorized entries, and thereby vest such interest in Matthews & Co. as could not lawfully be divested by the subsequent act, authorizing the issuance of

grants upon entries which had not become effective by reason of the chasm? The entry having been made without any authority of law, no right vests under it at the time, and none arose when the hiatus occurred." And the court added: "No case can be found sustaining a younger entry where the grant did not precede the hiatus." 88 Tenn., 132 (14 S. W., 554).

Manifestly, the doctrine of the foregoing case does not support the contention of the defendant in this cause, because in that case the junior entry was made and grant procured when there was no hiatus. This case comes expressly within the rule announced in *Williamson* v. *Throop,* 11 Humph., 265, and *Blevins* v. *Crew,* 3 Sneed, 152.

In the last named cases, the entries and the grants were procured prior to the hiatus, just as in the case at bar, while in *Henegar* v. *Matthews,* the Matthews' grant was subsequent to the chasm, and obtained after the passage of the extension act, upon which the grant relating to the elder entry issued.

We think the weight of authority is clearly to the effect that, where the younger entry is made, and the elder grant is issued upon it before the hiatus, such title will prevail over an elder entry and a younger grant where the latter is issued after the hiatus.

This is clearly the doctrine stated in *Williamson* v. *Throop,* and *Blevins* v. *Crew,* supra; also in *Gass* v. *Waterhouse* Tenn. Ch. App., (61 S. W., 452) and *Cowan* v. *Hatcher,* Tenn. Ch. App. (48 S. W., 328)

which last-named causes were orally affirmed by this court.

In this case the grants and entries under which complainants deraign title were made and issued before the hiatus, and defendant's grant was not procured until some years thereafter. Therefore the title of the defendant must fail. And, if the complainants are able to connect themselves with the said entries and grants by proper deraignment of title, their contention must prevail.

This brings us to the next question, which arises under the complainants' assignments of error, and relates solely to the tax deed executed to King in 1866, founded on the tax sale made in 1853. Said deed reads as follows: "Whereas, a judgment was given in favor of the State by the circuit court of Johnson county on the 18th day of March, 1853, for $51.08½ for taxes, costs, and charges due and unpaid for the year 1852 against ten different tracts of land, one of which Jno. H. Fulton is the reputed owner, containing 5,000 acres, lying in the State of Tennessee, Johnson county, district No. seven, and bounded as follows." Then follows the description by metes and bounds, and the other nine tracts are taken up in succession in like manner. After giving the description of the tenth tract, the deed recites: "On which judgment and order an order of sale was issued to James W. Wright, former sheriff and revenue collector of Johnson county, on or about the 8th day of

April, 1853, by virtue of which, after advertisement and giving notice agreeably to law, said James W. Wright, then sheriff, sold the said land at the courthouse door of said county on the first Monday of July, 1853, at public sale, to William King, for $51.-08½ paid to him, that being the highest bid for the same: Therefore, I, Isaac S. Shoun, as sheriff of said county, in consequence of the premises, and for the consideration of the sum of $51.08½ paid to the said Wright, and receipted for by him, do hereby transfer and convey said tracts of land above described to said William King and his heirs and assigns, forever, in as full and ample a manner as I am, as sheriff aforesaid, authorized and required to do by law; but no further or otherwise.   Nov. 6, 1866."

The record offered in support of this deed was the following: "Monday, 14th day of March, 1853. State of Tennessee.   Be it remembered that at a term of our circuit court of law begun and held for the county of Johnson, in said State, at the courthouse in the town of Taylorsville on the 2nd Monday, it being the 14th of March, A. D. 1853, present the Hon. Robert H. Hynes, one of the circuit judges of the State of Tennessee, aforesaid, duly appointed, commissioned, and qualified as such, and assigned to hold the court of the 12th judicial circuit in said State, who is presiding and holding said court by interchange of rulings with the Hon. Seth J. W. Luckey, one of the judges of the State aforesaid, and assigned to hold the

courts of this, the first judicial circuit of said State, among other things heard, determined, adjudged, and decreed, was the following, to wit: James W. Wright, sheriff and collector of public taxes for the county of Johnson and State of Tennessee, this day returned into the court the following report of the following tracts of land, as having been returned for taxes for the year 1852, and that the taxes thereon remained due and unpaid, and that the respective owners thereof have no goods and chattels within this county which he can distrain for the taxes, to wit: (1) William King, one tract of land, 5,000 acres, lying in said county in civil district number first, valued at $250; taxes, $1.03¾; sheriff's fee, $1.00; clerk's fee, $1.50; printer's fee, $1.50."

Then follow similar descriptions of each of the other nine tracts, showing each one separately, and description of each tract, taxes, and costs against it; differing only from the above in the names of the owners, descriptions, amount of taxes, and costs.

The judgment then concludes in these words: "Whereupon it was considered by the court that judgment be, and it is hereby, entered against the aforesaid tracts of land in the name of the State for the sum annexed to each, being the amount of taxes, costs, and charges due severally thereon for the year 1852; and it is ordered by the court that the several tracts of land, or so much thereof as shall be sufficient of each

of them to satisfy the taxes, costs, and charges annexed to them severally, be sold as the law directs.

There was also offered in support of the deed the sheriff and collector's report as to the delinquent taxes for 1852, due on each of the 10 tracts of land, and a description of each tract, with the tax and costs against same.

The clerk of the circuit court of Johnson county has certified as follows: "State of Tennessee, Johnson County. I, I. S. Rambo, deputy circuit court clerk of the said county, do certify that the foregoing is a true and perfect transcript of the record and of the proceedings had for the sale of William Ewing and Jno. H. Fulton lands for taxes for the year 1852, and the above is all the record that can be found in my office in relation to said sale. I further certify that I have made diligent search for the order of sale in my office, and said order can not be found in my office. The above is a true copy of all that I can find in my office in relation to said proceedings as appears of record on file. Witness my hand this 5th day of August, 1901."

It further appears that when this certificate was offered in the lower court as evidence in behalf of the complainants, no exception was interposed, and no objection offered until the case was appealed. The court of chancery appeals find that the original grantees of the tracts of land embraced in the foregoing sale or sales have never set up any claim to the lands,

Sheafer v. Mitchell.

or made any objection to the tax title acquired by King, or attempted to exercise any ownership over the lands since that time, so far as the record discloses.

It will be observed that the order of sale and return thereon are lost, but the order of sale under the statute was merely a copy of the judgment. Acts 1835, ch. 15, sec. 7; Acts 1843-4, ch. 92; Code 1858, secs. 614, 615.

A valid tax deed should, under Act 1835, c. 15, contain the following recitals: (1) The consideration paid; (2) a sufficient description of the lands; (3) the judgment upon which the sale was made; (4) the date of judgment, and the court where rendered; (5) the fact of legal notice having been given; (6) the sale of the property and date thereof.

And it is enacted "that in all cases where these requisites shall have been complied with and shall have been recited in the said deed or deeds of conveyance. the same shall be good and effectual between the parties." Acts 1835, c. 15.

All these prerequisites appear in the deed in question.

The foregoing statute was amended January 15, 1844. The first section of the act is in these words: "Be it enacted by the general assembly of the State of Tennessee, that in all cases of sales for land hereafter made for public taxes, under the provisions of the laws now in force, it shall be sufficient, to make such sale valid and communicate good title to the

purchaser, that the land so sold lies in the county in which it has been reported for nonpayment of the taxes thereon, that it has been duly reported, that an order of sale has been awarded and that the sale of said land was duly advertised, to establish which fact the sheriff's deed reciting their existence shall be *prima facie,* and all judgments or orders of sale shall be conclusive, unless the person wishing to show the irregularity of the same can prove that the taxes were duly paid before such judgment or order of sale was rendered." Acts 1843-44, ch. 92.

That act modifies the act of 1835 as to requisites of a sheriff's deed. In the fourth section of said act it is provided that "all laws upon the subject of tax sales shall receive a liberal construction so as to carry out the true object and intention of the legislature." Evidently this statute was intended as a further effort towards securing valid tax sales, and protecting them from attacks arising from technical irregularities, and to enable the State to better secure or collect its revenue.

Another act relating to the public revenue and the execution of tax deeds was passed in 1847-48. This act is as follows: "Be it enacted, that when any sheriff or tax collector has sold or may sell any land in this State for the taxes, he is hereby authorized to make a deed of conveyance for the land so sold to the purchaser, and when any such sheriff or tax collector has gone, or shall go, out of office, not having executed

deeds for the land sold by such sheriff or collector, while in office, it shall be the duty of the successor in office of said sheriff or tax collector to execute such deed for all lands sold by a former sheriff or tax collector, which deeds shall be good and valid in law and equity as if the same had been executed by the sheriff or tax collector who sold the land." Acts 1847-48, ch. 147.

Under this act, where the sheriff who sold the land is gone out of office, his successor can make the deed, which is as "good in law and equity as if it had been executed by the officer who sold the land." It appears that the intention of this act was to give the deed of the successor the same force and effect as the deed of the officer who made the sale.

This matter was brought to the attention of the next general assembly, and another stronger and more explicit act was passed February 19, 1850, as follows: (1) Be it enacted by the general assembly of the State of Tennessee, that in all cases in which lands have been sold, or may hereafter be sold, for default in the payment of taxes, it shall, and may be, lawful for the tax collector selling the same, or any of his successors in office, to make a deed or deeds to the purchaser, or to any other person to whom the purchaser may direct the deed to be made, after the time of redemption shall have expired. (2) That any such deeds shall be good and valid, as evidence

of title in any court of law and equity in this State."
Acts 1849-50, ch. 102, p. 295.

In construing the foregoing acts touching tax sales
and deeds, certain other statutes of the State must be
borne in mind.    Ever since Acts 1801, c. 8, there has
been an express statutory provision forbidding an offi-
cer from executing a deed to a purchaser at a tax sale
until the expiration of twelve months from the date
of sale, during which time the tax debtor was given
the right to redeem.    Ever since the constitution of
1796, the term of office of a sheriff has been limited to
two years, and hence it is clear that under the fore-
going statutes and the constitution, every sale made
by a tax officer in the last year of his term of office
would have to be followed by a deed to be made by his
successor in office: in fact, in one-half of the tax sales
made, if consummated, the deed would have to be
made by a successor.

Now, it is clear to us that prior to the adoption of
the Code of 1858, by virtue of the foregoing acts, the
legislative intent to make a tax deed of a successor
in office *prima facie* evidence of certain facts is clear
and conclusive.

The learned counsel for the defendant, although
admitting that the validity of the sale and the pro-
ceedings prior thereto must be judged and determined
by the laws in force at the time of the sale, most earn-
estly insists that the evidential force of a tax deed
made after the adoption of the Code must be treated

and decided by the provisions of the Code of 1858. This distinction is not material in the view we take of the case, as, in our opinion, the several sections of the Code of 1858 touching the tax deed, its evidential force, as well as all of the proceedings regulating the sale of lands for taxes, are to be treated as, and are, a fair and just compilation of all the previous acts in force upon the subject; and this is especially true in view of the fact that the declared object of the legislature in the appointment of the revisers whose work is embodied in that Code was, in the language of its resolutions, "to revise and digest" the existing statutes, not to alter them. This court has accordingly, in view of this fact, said that one general rule in relation to the construction of the Code is that in doubtful cases it will be presumed that it was not intended to change, but only to revise or compile the old statutes. *Bates* v. *Sullivan,* 3 Head, 633.

In every case we have been able to examine of the decisions of this court involving a tax deed the court has uniformly treated the tax deed even made by a successor of the officer selling as *prima facie* evidence of the facts required to be recited, except in the case of *Allen* v. *Moss,* 2 Shannon's Cas., 317, wherein the court held that the statute making the recitals of the sheriff's deed *prima facie* evidence of the facts contained therein did not apply to the successor of the officer who made the sale. By reference to that case, however, it will be seen that neither Acts 1849-50, ch.

102, nor several of the acts hereinbefore cited, were called to the attention of the court. The opinion in that case is based on the construction given to Acts 1809, ch. 84, Code 1858, secs. 627, 628, 640, 641, and Acts 1843-44, ch. 92. In that case, aside from the recitals of the deed, there was no record of a report of the land for unpaid taxes, no order of condemnation and sale, nor any advertisement; but in the case at bar there is record evidence to support all the recitals in the deed except the order of sale and return thereon, which the clerk certifies are lost.

When Acts 1849-50, ch. 102, were passed there were already two statutes upon the subject, full and clear in their requirements. The last act must have been intended to make the deed of the officer making the tax sale and his successor sufficient evidence not only of the sale and its essential prerequisites, but of title in the purchaser.

It is explicit and clear in meaning, and there could have been no other purpose in its enactment except to make it "evidence of title in any court of law and equity in this State." Besides, the recitals containing the description of the land, that it had been duly reported, that the order of sale had been awarded, the judgment upon which the sale was made, the fact of legal notice being given, and the sale and date of the property sold, were all essential to constitute a valid deed. If the deed itself did not afford *prima facie* evidence of these essentials of such deed when stated

Sheafer v. Mitchell.

on its face, how could it "be good and valid as evidence of title in any court of law and equity in this State," as required by that statute?

This being a remedial statute to provide against irregularities in tax sales, we think it should be liberally construed, so as to "advance the remedy and suppress the mischief" sought by the passage of the act. *Tharp* v. *Hart,* 2 Sneed, 572.

We are of opinion that under and by virtue of the acts of 1849-50, and the various other statutes then in force, the sheriff's deed was properly offered in evidence in support of the complainants' chain of title, and that all its recitals are *prima facie* evidence of their correctness.

It is said that a sale in bulk is void, and would interfere with the separate rights of the owners to redeem. Code 1858, secs. 632-638.

That is true, but the answer to this is: (1) That it does not affirmatively appear from the deed that the lands were sold in bulk; (2) the deed was made long after the time for redemption had expired; (3) the right to redeem is a personal right of the former owner, and the defendant can not, as claimant under an adverse title, obtain any benefit under that right; and, besides, the party seeking to redeem does not look to the deed, but to the sheriff's return, to learn what amount is necessary to pay the redemption. *Polk* v. *Mitchell,* 85 Tenn. (4 S. W., 221) ; Code 1858, secs. 613-615.

The chancellor and court of chancery appeals admitted the said deed in evidence, but the chancellor construed it to mean that the ten tracts of land referred to were sold in bulk, and not separately, and therefore the deed is void; and the court of chancery appeals affirmed this decree, but failed to state whether it was for the reasons given by the chancellor, or on some other grounds urged in argument.

This deed was duly registered some thirty-five years ago. Numerous subsequent conveyances of these lands have been made from time to time, involving large sums of money, and no question raised touching the validity of the tax deed, until this litigation arose. After a long lapse of time, and especially when the original proprietors have asserted no title, we think every reasonable presumption should be indulged in to uphold such a conveyance, unless it is void on its face; and this presents the vital question now to be determined. *Childress* v. *Harrison*, 1 Baxt., 411; *Gonzales* v. *Ross*, 120 U. S., 605 (7 Supt. Ct., 705, 30 L. Ed., 801).

Where a deed has been registered in the county where the land lies for thirty years, it is presumed that it is regular, although the name of the grantor may not be signed to the deed, or the name of the bargainor not appear therein.    Shannon's Code, sec. 3762; *Dodge* v. *Briggs* (C. C.) 27 Fed., 160.

"Tax deeds for several lots, which state only the

gross amount for which they were sold, are not for that reason invalid." *Orton* v. *Noonan,* 25 Wis., 672.

And in Iowa it is held: "No objection can be made to the validity of a tax title on the ground that the deed shows upon its face that several tracts of land were sold for a gross sum after the expiration of five years from the time of sale." *Thomas* v. *Stickle,* 32 Iowa, 71.

In Missouri, the court said: "A sale under a special execution issued on a judgment for back taxes can not be collaterally impeached because two lots were sold together, the judgment having been rendered for a specific amount against each of the lots." *Howard* v. *Stevenson,* 11 Mo. App., 410.

Again: "The mere fact that a tax deed comprises several distinct lots or parcels of land raises no presumption that the lots were sold *en masse.*" *Gage* v. *Bailey,* 102, Ill., 11; *Towle* v. *Holt,* 14 Neb., 221 (15 N. W., 203); *Watkins* v. *Inge,* 24 Kan., 612.

A tax sale must be tested by the tax law in existence at the time of the sale, and, if the deed executed under such sale was valid under the law then in existence, the deed could not be affected by any subsequent legislation. *Tracy* v. *Reed,* (C. C.) 38 Fed., 69 (2 L. R. A., 778, 779); *Richardson* v. *Marshall Co.,* 100 Tenn., 352 (45 S. W., 440); *Douglass* v. *Pike Co.,* 101 U. S., 677 (25 L. Ed., 968); *Taylor* v. *Ypsilanti,* 105 U. S. 60 (26 L. Ed., 1008).

Under our statutes it is not necessary to show on

the face of the deed that the different tracts of land described therein were separately sold for certain specific sums each. This question was settled in the case of *Brien* v. *Creighton,* 2 Shannon's Tenn. Cas., 211. In that case the court says that the fact that the sale was made in bulk, and not separately, when the deed is not clear as to how the sale was made, might be set up in defense upon the trial, but the fact that the deed does not set forth how the sale was made would not render it void if the statutory prerequisites are recited. *Brien* v. *Creighton,* 2 Shannon's Tenn. Cas., 211.

"In the absence of anything to the contrary, the presumption of law is not only in favor of the exercise of power, but, if there be a legal and also an illegal mode of exercising it, and it is left doubtful from the proof which was adopted, the presumption of law in favor of meritorious claims of innocent purchasers is that it was exercised in a legal mode." *Marshall* v. *Stephens,* 8 Humph., 159 (47 Am. Dec., 601) ; *Wilburn* v. *Spofford,* 4 Sneed, 704; *Murdock* v. *Leath,* 10 Heisk., 188; *Crisman* v. *Johnson* (Colo. Sup.) 47 Pac., 296 (58 Am. St. Rep., 256) ; *Burnett* v. *Austin,* 10 Lea, 567.

In order to determine how the sale or sales were made, the deed must be looked to as a whole, and not to isolated portions of it.

In the deed each of the tracts of land are described by metes and bounds.

Then, when we turn to the judgment rendered, we find the ten separate tracts set out under ten separate heads, and the amount of taxes, costs, and charges on each separate tract stated and adjudged against each tract as prescribed by statute. Code 1858, secs. 613, 614.

Here we have in effect, ten separate judgments rendered against ten separate tracts of land, and these are the judgments referred to in the sheriff's deed in the singular as "judgment" for $51.08½, and this is the correct aggregate amount due against the ten separate tracts of land, as shown in the judgment.

The deed further shows that on these ten judgments an order of sale issued to James W. Wright, former sheriff; that it ordered ten tracts of land sold separately to satisfy the judgments pronounced against each of them. These were the judgments and order of sale which the sheriff was empowered and directed to carry out, and his authority for selling the lands; and the sheriff who made the deed, the successor to the officer who made the sale, had before him, we take it, these judgments and order of sale at the time he executed the deed in question, and this deed speaks from them. It recites that the sheriff, by virtue of the order of sale, which he had in his hands, sold the land, clearly referring to the ten tracts set out in the previous portion of the deed, "to Wm. King for $51.08½, that being the highest bid for the same." The deed then conveys to William King "said

Sheafer v. Mitchell.

ten tracts of land above described" as separate tracts, and not as a whole, because they are set out in the deed separately, and separately described.

It is true that in some parts of the deed the lands are referred to in the singular as "land," but in the conveying clause they are mentioned in the plural as "ten tracts of land, above described."

We are of opinion that when the deed and record to which it refers, and upon which the deed is founded, are taken and considered together, it can not be said that the deed shows affirmatively on its face that the said ten tracts of land were sold in bulk. The presumption of law is that the sheriff, in making the sale, and his successor in making the deed, followed the only authority they had for performing their official duties.

It is not probable that the sale was made in bulk when the order of sale expressly directed the sheriff to sell said tracts separately, or so much of each of them as would be sufficient to pay the taxes, costs, etc.

The fact that one man became the purchaser at a certain sum only affords, placing it on the highest ground, an inference that the lands were sold as a whole. Indeed, taking the most extreme view of the interpretation to be given this deed as tending to support the theory that it was sold *en masse*, we might say that the deed itself does not certainly show whether the sale of the said lands was made sep-

Sheafer v. Mitchell.

arately or in bulk. To warrant the court in holding this conveyance void for the reasons indicated, we are of opinion that it should clearly and affirmatively appear on the face of the deed, or by oral or other evidence of such fact, that the land conveyed therein was sold in bulk, and hence contrary to law, even if that question could avail the defendant, who is a stranger to the original grantees or debtors for whose benefit such requirements may have been made.

When the recitals of a tax deed do not make it clear as to how the sale was really made, we think, after such a long lapse of time, when valuable property rights are involved, the courts should scrutinize with great care and deliberation attacks made on conveyances of this long standing, and before setting them aside it should clearly and fully appear, from a fair interpretation of the deed and the records upon which it is founded, that it is null and void, and vests no title in those claiming under it. We think the weight of reason and sound principles of public policy favor this rule of construction.

We are of opinion that this tax deed is not void, but is a valid conveyance.

The theory of the second error assigned is that, if the tax deed is defective, the original owner or his privies can alone take advantage of it; and the defendant, who is a stranger to the title, can not do so. It is earnestly argued that the great weight of authority supports this proposition, and counsel cite

Freem. Ex'ns, pp. 984, 985, and other authorities. The reason, it is said, for holding such sales void or voidable, at the election of the execution debtor and his creditors, is that it embarrasses their right of redemption; and that this reason does not apply to strangers. Freem. Ex'ns, 985; *Lamm* v. *Railroad Co.,* (Minn.) 47 N. W., 455 (10 L. R., 269).

*Harlan* v. *Harlan,* 14 Lea, 115, it is insisted, involved an analogous question. In that case the court said: "Where an execution is not in proper form, or when it misrecites the judgment, as no one but the defendant can be injured, no one but he ought to be allowed to complain; and his complaints, ought not to be heard where, by his apathy, he has allowed the rights of third persons to accrue; or even when he has allowed the plaintiff to be placed in a worse situation than if prompt complaint had been made."

This contention, though plausible and just when applied to the facts of this cause, need not be passed upon as one of the controlling questions, as the said deed has already been upheld upon grounds we deem sufficient.

The decree of the court of chancery appeals is therefore reversed, and a decree will be entered here in favor of the complainants, and the defendants taxed with all costs.