EMILY FRAZIER WILHELM AND WALTER WILHELM, HER HUSBAND, AND MARY M. TYRE, JOINED BY HER HUSBAND, A. M. TYRE, *Appellants,* v. CARRIE LOCKLAR AND LOUIS LOCKLAR, AS ADMINISTRATORS OF THE ESTATE OF IRVIN LOCKLAR, DECEASED, *Appellees.*

1. A judgment upon an indebtedness not constituting an obligation contracted for the purchase of a homestead is not a lien thereon.

2. The exception in the constitution rendering a homestead liable for an obligation contracted for the purchase of said property must be strictly construed.

3. Where A lends money to B wherewith B pays off a note due for the purchase money of his homestead, and A takes B's note therefor, with C's endorsement thereon, to which A looks for

Wilhelm et al. v. Locklar et al.—Opinion of Court.

security, such lending does not constitute "an obligation contracted for the purchase of said property."

4. A Circuit Clerk is without jurisdiction to enter a judgment by confession, when no default has been taken, no declaration filed, no summons addressed or delivered to a sheriff or other proper officer to serve, and the plaintiff does not appear to have taken any part in the proceedings; a judgment so entered is void and will not support a creditor's bill.

This case was decided by Division B.

Appeal from Circuit Court for Lee county.

The facts in the case are stated in the opinion of the court.

*Wilson & Wilson* for appellants.

*William Hocker* for appellees.

COCKRELL, J.—This is an appeal from a decree setting aside as fraudulent certain deeds from one N. L. Langford to the Wilhelms and from the Wilhelms to Mary M. Tyre, then the wife of the said N. L. Langford. Upon application of the said Langford there has been allowed a severance and dismissal as to him. The realty involved consists of a lot 105 by 248 feet in the town of Fort Myers, alleged in the answer to have been the homestead of the Langfords at the time of said conveyances.

We need consider but two questions in the case before us. Did the indebtedness to complainants' intestate constitute an "obligation contracted for the purchase of said property," and, secondly, was the judgment by confession sufficient to support a bill in equity, to set aside the conveyances as fraudulent.

The evidence establishes the fact that Mr. Langford was at the time of these conveyances entitled to a homestead in this lot, or if we concede Ft. Myers to be an incorporated

town, to all but a small part thereof, and as to the part exempt it is wholly immaterial whether there has been an attempted transfer to the homesteader's wife. No judgment is a lien on said property, unless it come within the exceptions of the constitution. *Murphy v. Farquhar,* 39 Fla. 350, 22 South. Rep. 681.

Appellees seek to bring the case within the exceptions on the theory that the indebtedness "accrued by virtue of a loan of mony to said N. L. Langford for the express purpose of paying the principal part of the purchase money required to purchase the said premises." The record before us, however, shows conclusively that Langford had already purchased the land of a third party for four hundred dollars cash and one thousand dollars on time, evidenced by note, and finding he could secure a considerable discount for cash, obtained the money from appellees' intestate and paid off this note, before it matured, therewith; that the lender did not look to the land for the return of his money, though informed that it had been used to pay off this lien, but did look to the endorsement of Langford's brother on the note as the security for the loan. Can such a transaction bring about in the language of our constitution an "obligation contracted for the purchase of said property?"

While the precise point has not been decided by this court, yet a clear intimation has been given in construing the cognate exception "for the erection of improvements."

In *Lewton v. Hower,* 18 Fla. 872, text 882, it was held: "The provision of the constitution that the homestead may be liable 'for the payment of obligations contracted for the purchase of the premises, or for the erection of improvements thereon,' must be strictly construed. (3 Minn., 53) 'An obligation contracted for the erection of improvements' is an obligation to pay for labor and materials bestowed and used in the construction of such improvements.

"An indebtedness for money borrowed to purchase materials, or to pay for labor bestowed in improving lands, or money expended in the purchase of such materials, or in

46 Fla.—20

payment for such labor, is not an obligation contracted 'for the erection of improvements,' nor an obligation contracted for such labor, and is not within the exceptions of the constitutional provisions. The contract in such case is to repay money loaned or expended, and not a contract to pay for the erection of improvements, or for labor on the premises.

"The purpose of the exception of 'obligations contracted for the erection of improvements,' and for 'labor performed on the same,' so that a homestead is liable for such debt, though not for debts generally, is that those who have furnished the materials and preformed the labor may have their remedy upon the property that have in part created and enhanced by the bestowal of their labor and property, and in the absence of any provision giving the lender of moneys, which have been expended upon the property, the benefit of the exception, the courts are powerless to extend it to them."

A strict construction must, therefore, be given to this exception, and we do not feel disposed to extend the terms "obligations contracted for the purchase of the property" to one who lends money to the vendee, even though the latter uses it in paying a third party who came within the exception, especially when the lender does not rely on the property for security, but takes a simple note therefor and looks to the endorser on such note for payment. We freely admit that courts of the highest respectability hold a different doctrine, though we find none in which the facts are on all fours with this case, yet there are many that hold to the construction of similar constitutional provisions, which we place upon ours, and there is ample justification in following our own decision. *Brodie v. Batchelor,* 75 N. C. 51; *Calmes v. McCraken,* 8 Rich. (S. C.) 87; *Gray v. Baird,* 4 Lea, 212; *Loftis v. Loftis,* 94 Tenn. 232, 28 S. W. Rep. 1091; Nottes Appeal, 45 Pa. St. 361; *Lear v. Heffner,* 28 La. Ann. 829. As to so much, therefore, of said lot as constituted a homestead, there was no ground upon which the creditor could charge the property, and hence there

was no equity for setting aside the conveyances as fraudulent.

Conceding the lot to have been in an incorporated town, and that it be larger than one-half acre in area, did appellees have the standing in equity to set aside the deeds as to this excess? They seek to found this equity upon a "confession of judgment," an execution upon such judgment and an inability on the part of the sheriff to realize on this execution. It appears that on the ninth day of February, A. D. 1898, the following order or writ was issued by the clerk of Lee county:

"THE STATE OF FLORIDA,

GREETING:

You are hereby commanded to summon N. L. Langford and T. E. Langford, if they be found in your county, to appear before the judge of our Circuit Court, for the Sixth Judicial Circuit of the State of Florida, at the court house in Fort Myers on the first Monday in March, next, at a court to be held on that day, in and for the county of Lee, then and there to answer Irvin Locklar in action of assumpsit—damages $1100.00. And have then and there this writ.

WITNESS, W. M. Hendry, Clerk of our Court,
(Seal.)　　　and the seal of the said court, at the court house at Fort Myers aforesaid, this 9th day of February, A. D. 1898.

W. M. HENDRY, Clerk.

JAS. L. HARN, Attorney for Plaintiff."

The above does not appear to be addressed to any officer or person, nor does it appear to have ever come into the hands of the sheriff, much less to have been served by him. The record further shows that prior to the return day mentioned in the above order or writ, a paper writing was filed in the said clerk's office on the twelfth day of February, A. D. 1898, as follows:

"In the Circuit Court, Sixth Judicial Circuit of Florida, in and for Lee county:

| | |
|---|---|
| Irvin Locklar | Assumpsit. |
| vs. | Damages $1100.00. |
| N. L. Langford and | Confession of Judgment. |
| T. E. Langford. | |

We, the undersigned named defendants in above entitled cause, have hereby for ourselves privately and singly confessed judgment before the clerk of the Circuit Court, in and for Lee county, Florida, for ten hundred and fifty-six and 95-100 dollars, damages due Irvin Locklar, and the said clerk of the Circuit Court is hereby authorized to enter judgment against us jointly in favor of Irvin Locklar for said sum and costs.

(Signed)     N. L. LANGFORD,<br>T. E. LANGFORD."

And thereupon the clerk on the same day entered in his record book the following: "And now on this 12th day of February, A. D. 1898, came the defendants, N. L. Langford and T. E. Langford, and file their written confession of judgment in favor of the plaintiff, Irvin Locklar, for the sum of ten hundred and fifty-six and 95-100 dollars. Therefore it is considered by the court that the plaintiff, the said Irvin Locklar do have and recover of and from the defendants, the said N. L. Langford and T. E. Langford, the sum of ten hundred and fifty-six and 95-100 dollars, as his cost in this behalf sustained and that plaintiff do have execution therefor.

(Signed)     W. M. HENDRY, Clk. Ct. Ct.,<br>By J. E. FOXWORTHY, D. C."

No declaration appears to have been filed nor does the plaintiff appear to have taken any part in the proceedings, unless and except the inference be indulged that he applied for summons. The reasoning of this court in *Epstein v. Ferst,* 35 Fla. 498, text 513, 17 South. Rep. 414, is most persuasive, if not conclusive, of the point. "Can a clerk of the Circuit Court who is purely a ministerial officer with

only statutory power enter a valid judgment in a proceeding of this kind? Admitting such a paper to be a confession of judgment, had the clerk the authority to enter a judgment upon such a confession made without service of process, when no suit was pending, and without any appearance by the defendant or any proof that he executed such a confession. Clearly there is no statutory authority for such action in this State."

We think the principle of the case referred to rules this, and that the judgment entered by the clerk under the circumstances of this case, though differing in some respects from the circumstances of the other, is void, and being void can not support a bill to set aside a fraudulent conveyance.

The decree of the Circuit Court is reversed with directions to dismiss the bill.