WYATT J. GETER, *Appellant,* v. CATHERINE SIMMONS, *Appellee.*

RESULTING TRUST—HOW ESTABLISHED—LACHES.

1. A resulting trust in real estate may be proved by parol, but the evidence to establish it must be so clear, strong and unequivocal as to remove from the mind of the chancellor every reasonable doubt as to the existence of the trust.

2. Courts of equity view with disfavor suits brought long after the transactions in issue have occurred, and long after death has closed the lips of those familiar with the occurrences remote in point of time.

3. No rule of law is better settled than that a court of equity will not aid a party whose application is destitute of conscience, good faith and reasonable diligence, but will discourage stale demands for the peace of society, by refusing to interfere where there have been gross laches in prosecuting rights, or where long acquiescence in the assertion of adverse rights has occurred. This recognized doctrine of courts of equity to withhold relief

from those who have delayed the assertion of their claims for an unreasonable length of time may be applied in the discretion of the court, even though laches are not pleaded or the bill demurred to.

4. The question of laches turns not simply upon the number of years which have elapsed between the accruing of rights and the assertion of them, but also upon the nature and evidence of those rights, the changes in values, and other circumstances occurring during the lapse of years.

This case was decided by the court En Banc.

Appeal from the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

*I. L. Purcell* and *N. P. Bryan,* for Appellant;

*Cockrell & Cockrell* and *C. S. Adams,* for Appellee.

TAYLOR, J.—On the 3rd day of August, 1905, the appellee as complainant below filed her bill in equity in the Circuit Court of Duval county against the appellant as defendant below alleging in substance that she and one Alfred Grant were children and heirs at law of one Leah Grant. That Leah accumulated considerable property and invested it in lands at and near Jacksonville in said county, but that the title to the said lands was taken in the name of Alfred Grant, who was a freeman and could read and write while Leah and oratrix could not read or write, all living together as mother and children, said parcels of land being particularly described as Lots One, Four and Five in Block One Hundred and One (101), and Lot Three (3) in Block One Hundred and Eight (108) according to what is called Hart's Map

of the City of Jacksonville. That the said Leah Grant
departed this life in March, 1882, and the said Alfred
Grant subsequently departed this life about the 25th
of March, 1883. That the said Alfred Grant
held the title of said lands in trust for your
oratrix, that is to say, the title of said Lot Five
was so held in trust solely for the use, benefit and be-
hoof of your oratrix in fee simple subject to the use of
the said Leah during the said Leah's life, and the other
parcels aforesaid described were vested in said Alfred
in trust after the death of said Leah, one half for himself
and his heirs and the other half share solely and wholly
for the use, benefit and behoof of oratrix. That ora-
trix has been residing on and in the actual possession of
said Lot Five for the past thirty years, claiming to own
the same, and since the death of the said Leah your ora-
trix has been and still is the sole beneficial owner there-
of, the bare legal title only being in the trustee aforesaid.
That defendant claims to own said lands all and singu-
lar solely by virtue of inheritance as an heir of an heir of
said Alfred Grant and under such claim, and not other-
wise, the defendant has the actual possession and usufruct
of all of such lands except the part upon which your ora-
trix resides and has resided as aforesaid. That defend-
ant is in no sense a purchaser for value and all title what-
soever vested in the defendant is so vested as trustee
one half share for your oratrix and one half share for the
heirs or assigns of Alfred Grant, except as to Lot Five,
and as to the latter the legal title is held in trust wholly
and solely for the sole use, benefit and behoof of your
oratrix. That the defendant has for several years last past
been collecting the rents and receiving all income from
said properties, except as to Lot Five, your oratrix has
been residing thereon, thereby enjoying the use thereof,
and has never paid rent therefor or attorned to anyone,

claiming to own the same as aforesaid. That your oratrix. was born in slavery, has had no education, cannot read. or write, knows little about business matters or property rights, and until a few months, less than a year ago was. not apprised of any claim or claims adverse to her equities herein set up. The defendant claims ownership. solely by virtue of said inheritance as aforesaid, now disclaims any trust, now denies that your oratrix has any equities in the premises, and now refuses to account for the rents and income from said properties and refuses to pay your oratrix any part thereof.

The bill prays that complainant be adjudged to be the sole beneficial owner of all of said Lot Five and the beneficial owner of an undivided one-half share of all of said. other lots. That defendant be required to account for the rents and income of said properties and to pay complainant one-half of the net amount. That complainant be relieved of the trust aforesaid, be fully clothed with the legal as well as equitable title to the lands so beneficially owned by her as aforesaid, and for general relief.

The defendant answered said bill incorporating in his answer pleas in bar of the statute of limitations of twenty-five years, but such pleas were not accomplished. by the certificate of counsel and affidavit required by the rule and were subsequently stricken by the court. The answer denied all the material allegations of the bill from which any trust results, and admits that the title to all of said property was in the said Alfred Grant until the time of his death on March, 25th, 1883. The answer alleges. that the defendant Geter married in 1885 Rhina Grant, widow of said Alfred Grant, and that at that time the said Rhina Grant held said property by descent from her husband, Alfred Grant, she being his sole heir at law. That at the last mentioned date there was on said property but four small one-room tenement houses besides.

the house thereon in which said Alfred Grant lived with his wife, the said Rhina, and that said houses were all destroyed by fire in the year 1889, without insurance. That the complainant, Catherine Simmons, is a sister of the said Alfred Grant, deceased, and lived with the said Alfred and his wife, Rhina, until the death of said Alfred, and after the marriage of defendant to the said Rhina the complainant continued to live with defendant and his wife, and after the death of Rhina continued to live with defendant. That complainant has never made any claim or pretension that she was in anywise interested in the property mentioned in the bill either as owner or that she had any claim or interest to said property either in law or equity. The answer further alleges that when defendant intermarried with said Rhina there were no improvements on the property except as above described, and that defendant, believing the title to said property was in his wife as sole heir at law of the said Alfred Grant, in good faith, and with the knowledge of the complainant made large and extensive improvements thereon, and laid out large sums of money in buildings and other improvements thereon. That when defendant married the said Rhina there were no improvements at all on Lot 5 of Block 101 except a small house of the value of about $75 and in 1890 defendant erected thereon one one-story brick building containing eight rooms at a cost of $2,500. That on Lot 1 in said Block there was a small dwelling house which defendant enlarged and improved at the cost of $1,000. That on Lot Four there was a small dwelling valued at about $50, which was destroyed by fire in 1889 with no insurance, on which lot defendant has since erected one brick tenement house at a cost of $2,200, and one two-story brick house at a cost of $3,000. That on Lot Three in Block 108 there were four one-room cottages which rented at $3 per month each and

which were destroyed by fire in 1889 with no insurance. Since that time defendant has erected thereon brick buildings at a cost of $14,000, which consist of several stores and four small places and also one two-story blacksmith shop at the cost of $1,500, and besides defendant has paid out for paving streets and side-walks $3,000. That during the time he was making these improvements complainant Catherine Simmons was residing on a portion of this property with the consent of defendant, and saw these improvements being made on said property and at no time did she make any claim or ownership of said property or any part thereof or that she had any interest therein. That she has never paid any taxes on any portion of the property, nor has she contributed anything towards the improvements thereon, but was simply living on a portion of said property by indulgence of defendant. That he has paid all taxes, all insurance and made all improvements thereon at his own cost without any assistance from complainant. Replication to this answer was filed, and a master was appointed to take the evidence. A voluminous amount of evidence was taken and reported, and at the final hearing on bill, answer and the evidence reported the court below rendered a final decree finding the equities to be with the complainant, and that the defendant held the legal title to all of said property in trust one undivided half interest therein for the use and benefit of the complainant and the other undivided half interest therein for himself, and that he account to the complainant for one-half of the net rents and income derived from all of said properties after deducting the amounts expended by him thereon for maintenance, improvements, taxes and assessments, and a master was appointed to take such accounting and to report the same. From this decree the

defendant below takes his appeal to this court and assigns said decree as error.

The purpose of the bill in this case is to show and establish a resulting trust. From the pleadings and facts in proof the following principles of· law are applicable and govern the case: A resulting trust in real· estate may be proved by parol, but such proof must be full and clear, (Lofton v. Sterrett, 23 Fla. 565, 2 South. Rep. 837; Baker v. Vining, 30 Me. 121), or as the rule is more fully and accurately stated in Burdett v. May, 100 Mo. 13, 12 S. W. Rep. 1056, evidence to establish a resulting trust must be so clear, strong and unequivocal as to remove from the mind of the Chancellor every reasonable doubt as to the existence of the trust. Courts of equity view with disfavor suits brought long after the transactions in issue have occurred, and long after death has closed the lips of those familiar with the occurrences remote in point of time. *Ibid.* Knight Norman & Co. v. Turner C. L. Co., 55 Fla. 690; Griffin v. Societe Anonyme la ·Floridienne, 53 Fla. 801; Jacobs v. Parodi, 50 Fla. 541; Booth v. Lenox, 45 Fla. 191; §3216, 4 Elliott on Ev. and citations; 1 Moore on Facts, §44 and citations; Matthews v. Porter, 16 Fla. 466.

The question of laches turns not simply upon the number of years which have elapsed between the acruing of rights and the assertion of them, but also upon the nature and evidence of those rights, the changes in value, and other circumstances occurring during the lapse of years. Galliher v. Cadwell, 145 U. S. 368, 12 Sup Ct. Rep. 873. No rule of law is better settled than that a court of equity will not aid a party whose application is destitute of conscience, good faith and reasonable diligence, but will discourage stale demands for the peace of society, by refusing to interfere where there have been gross laches in prosecuting rights, or where long acquiescence in the as-

sertion of adverse rights has occurred. Hammond v. Hopkins, 143 U. S. 224, 12 Sup. Ct. Rep. 418. The recognized doctrine of courts of equity to withhold relief from those who have delayed the assertion of their claims for an unreasonable length of time may be applied in the discretion of the court, even though laches are not pleaded or the bill demurred to. Willard v. Wood, 164 U. S. 502, text 524, 17 Sup. Ct. Rep. 176; Sullivan v. Portland and Kennebec R. R. Co., 94 U. S. 806; Lansdale v. Smith, 106 U. S. 391, 1 Sup. Ct. Rep. 350; Badger v. Badger, 2 Wall. (U. S.) 87, text 95. In the case of Penn Mutual Life Ins. Co. v. City of Austin, 168 U. S. 685, text 698, 18 Sup Ct. Rep. 223, it is said: "The reason upon which the rule is based is not alone the lapse of time during which the neglect to enforce the right has existed, but the changes of condition which may have arisen during the period in which there has been neglect. In other words where a court of equity finds that the position of the parties has so changed that equitable relief cannot be afforded without doing injustice * * * it will not exert its equitable powers in order to save one from the consequences of his own neglect." Applying these principles to the proofs in this case we think the court below erred in the rendition of the decree appealed from.

The proofs show that Lot Three (3) in Block 108 was conveyed by J. C. Greeley and wife to Alfred Grant on June 6th, 1872, for the consideration of $450; That Lot One (1) in Block 101 was conveyed to him by Mary E. Hart on December 5th, 1876, for the consideration of $400; that Lot Five (5) of Block 101 was conveyed to him by O. B. Hart as Exor. of I. D. Hart on December 6th, 1865, in consideration of $250; that Lot Four (4) of said Block 101 was conveyed to him the said Alfred Grant by O. B. Hart as Guardian for Mary E. Hart on Jan-

uary 25th, 1868, in consideration of the sum of $225, and that all of said conveyances to Alfred Grant were spread upon the public records of Duval county as follows: The deed to Lot Five on June 2nd, 1869, three and a-half years after its execution. The deed to Lot Four on January 20th, 1869, within one year of its execution. The deed to Lot One (1) on December 20th, 1876, within fifteen days after its execution. The deed to Lot Three (3) on August 9th, 1875, a little over three years after its execution. That Leah Grant the first alleged *cestui que trust* died intestate in March, 1882, and that Alfred Grant the first alleged trustee died intestate on the 25th of March, 1883, and that his surviving widow Rhina Grant, in the absence of any other heir at law, duly elected to take his whole estate. That she continued in the possession of all of said property claiming to own the same by inheritance from her deceased husband, Alfred Grant, until the year 1995, when she intermarried with the defendant appellant, and that thereafter they continued in possession thereof, claiming the same to be hers until her death on November 25th, 1904, and that during that time the appellant at his own cost, as the property of his wife, the said Rhina, has put upon said property permament and substantial improvements in the shape of divers brick buildings upwards of $27,000, whereby the property which originally was purchased at an aggregate cost of $1325 has been increased in value by these permanent improvements more than twenty times, and all of this before the exhibition of her bill by the complainant. The complainant stood by and saw all of these improvements and assertive acts of absolute ownership being made, yet neglected to assert or bring forward any claim to or equity therein until the property had been increased twenty fold in value and until twenty-three years had elapsed from the death of her mother Leah Grant

through whom she claims, and until the lips of the first alleged trustee Alfred Grant had been sealed by death for twenty-two years, and until the lips of his wife and sole heir at law Rhina Grant had also been sealed by death. Under these circumstances, with no satisfactory or valid explanation for such delay in the assertion of her alleged rights a court of equity will refuse to lend her its aid. But again, in our view, the evidence adduced to establish the alleged resulting trust in the complainant's favor, when viewed under the shadows and obscurity cast by the long lapse of time since the occurrences testified about, is not so clear, convincing and free from reasonable doubt as to justify a court of equity in disturbing the title to real estate. The decree of the court below appealed from in said cause is hereby reversed, at the cost of appellee, and the cause remanded with directions to dismiss the complainant's said bill, but without prejudice to the right of the complainant appellee in any action that may be instituted against her at law by the appellant for recovery of possession of such part or portion of Lot Five in Block 101 as she may be in the actual possession of, to interpose as a defense to such action her prescriptive title thereto, if any, by long continual adverse possession thereof.

HOCKER and PARKHILL, JJ., concur.

WHITFIELD, C. J., and SHACKLEFORD, J., concur in the opinion.

COCKRELL, J., disqualified, took no part.

### REHEARING.

PER CURIAM.—This cause coming on for further consideration on an application for rehearing, and the court being fully advised of its judgment in the premises it is hereby ordered that the application of the appellee for

a rehearing in said cause be and the same is hereby denied, but the former judgment of this court in said cause is hereby modified so that the dismissal of the appellee's bill ordered therein shall be without prejudice to the right of the appellee to set up and urge her title by prescription, if any, as a defense to any possessory action that may be instituted against her for any part or portion of the premises in controversy of which she may have the actual adverse possession.