### DOING et al. v. RILEY.

### RILEY v. DOING et al.

### No. 12500.

United States Court of Appeals
Fifth Circuit.

July 22, 1949.

Rehearing Denied Sept. 17, 1949.

James A. Dixon, Miami, Fla., for appellants.

D. H. Redfearn, Miami, Fla., R. H. Ferrell, Miami, Fla., A. C. Dressler, Miami, Fla., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

This is a suit for construction of a will[1] and for a declaratory judgment as to the

---

[1] This will, after providing for payment of the debts and certain bequests of jewelry and wearing apparel to the sisters of testatrix, provided:

"All of the rest, residue and remainder of my property and estate, whether real, personal or mixed, and wheresoever situate, I give, devise, and bequeath unto my brother, Charles H. Doing, in trust, for the term of the natural life of my beloved husband, Bart A. Riley, for the purpose of collecting rents, profits and income therefrom, and paying said rents, profits and incomes to my said husband and all of my brothers and sisters, during the term of the natural life of my said husband, in the following proportions:

"Forty per cent thereof to my husband, Bart A. Riley; ten per cent thereof to my brother, Claude D. Doing; ten per cent thereof to my sister, Amy D. McFarline; ten per cent thereof to my sister, Florence A. Bielefeld; ten per cent thereof to my brother, Charles H. Doing; ten per cent thereof to my sister, Elizabeth M. Hutchinson; and the remaining ten per cent thereof to my sister, Ruth

rights of the parties, brought against the executor and the devisees under the will of the Plaintiff's wife.

The Plaintiff and Mrs. Riley were married in August, 1933. A year later testatrix purchased a lot in Surprise Lake Subdivision on which Plaintiff erected a residence with his own funds and with borrowed money secured by mortgage on the lot and building. This residence was occupied as their homestead until 1937, when they built the Adobar [2] Hotel and moved into it as their place of residence. The hotel was erected on four lots in Miami Beach which Plaintiff and testatrix purchased in 1935, taking title in the name of Mrs. Riley. Both Plaintiff and testatrix, according to the evidence, furnished funds for the purchase of the lots, but the amount furnished by each is not clear, although apparently the testatrix furnished a larger portion of the funds. There was quite a financial struggle by the couple to raise funds with which to build and to furnish the hotel. We do not undertake to determine the specific amounts of money furnished by each of the parties toward the acquisition of the lots, the construction of the hotel, and the purchase of the furnishings. Certain it is, however, that they entered into a joint adventure of acquiring the lots, constructing and furnishing the hotel, towards which each of the parties contributed their own separate funds. Some of the cost was borrowed and repaid out of the profits later derived from the hotel. Some of the advertising matter in evidence stated that the hotel was "operated under the individual supervision of Mrs. Bart A. Riley", but a post card picture of the hotel carried the following information: "Adobar Hotel (Mr. and Mrs. Bart A. Riley)". Much of the furniture was purchased on credit and in the name of the Adobar Hotel. Some of the invoices were addressed to "Mr. and Mrs. Bart A. Riley".

The evidence shows that the burden of financing the construction of the hotel and furnishing same fell heavily upon the husband, who apparently, by the utilization of funds derived from his law practice and by the full exercise of his credit, kept the enterprise from being put into bankruptcy or from being lost by foreclosure. At an early stage of the operation of the hotel the parties closed their individual bank accounts and opened a joint one in the name of "Adobar". The evidence shows that for a long time Plaintiff deposited all of his earnings over and above the personal expenses of himself and wife in this account and that same was largely used in financing the joint enterprise. The testatrix managed the hotel, but the transactions involving the finances and taking care of suits and judgments were handled by the Plaintiff, and were frequently satisfied out of funds which he made available.

It is in evidence that the hotel became a profitable venture, beginning with the opening of the 1938-1939 season, and was

---

E. Davidson. Upon the death of my said husband the trust hereby created shall terminate and all of my said property, whether real, personal or mixed, and wheresoever situate, shall be divided among my said two brothers and four sisters, per stirpes and not per capita, share and share alike, absolutely; provided, however, that should my said husband renounce this will and elect to take the share of a surviving husband in a deceased wife's estate, under the laws of inheritance of the State of my domicile at the time of my death, then and in that event the above created trust shall not take effect, and I then give, devise and bequeath all of my property, then remaining, whether real, personal or mixed, and wheresoever situate, to all of my said brothers and sisters, per stirpes and not per capita, share and share alike, absolutely.

"In recognition of the fact that my said husband has a lucrative law practice in the State of Florida, and therefore, could ill afford to devote his time to the active management of my estate, and particularly the operation of my hotel at Miami Beach, Florida, known as the 'Adobar,' I desire that my said trustee and executor give preference to my brothers-in-law, Fred S. McFarline and James D. Davidson, as active manager of said hotel, with such counsel, advice and assistance as my husband may see fit to render."

[2] The hotel was named the "Adobar", the letters "ADO" representing Adelaide Doing, the maiden name of the testatrix, and the letters "BAR" being the initials of Bart A. Riley.

successfully operated thereafter, although the Plaintiff supplied funds toward the satisfaction of debts after that time. It is in evidence that Mrs. Riley drew some funds from the hotel account which were invested in a home in New Lebanon, New York, and in the furnishing thereof, and that she drew other sums out of the hotel account, the exact amount of which we do not here undertake to ascertain.

The opinion of the Court below is reported at D.C., 77 F.Supp. 415, and we shall discuss the questions in the order in which they appear in that opinion.

The first question presented is whether or not the will of Mrs. Riley conferred upon her husband the option to "renounce this will and elect to take the share of a surviving husband" under the laws of the state. No statute of Florida confers upon the husband any option to renounce his wife's will and take under the laws of intestacy, as the wife may do. The Court below decided that the will granted no such privilege to the husband and from that portion of the decree the Plaintiff has filed a cross-appeal. We agree with the conclusion of the lower Court in this respect and its decision on the cross-appeal is affirmed.

The Plaintiff also insisted in the Court below and here that as to the furniture in the hotel, certain funds in the Miami Beach First National Bank, and as to the real estate in Florida, an estate by the entireties was created and that under the laws of the State of Florida the title thereto vested in Plaintiff, the survivor, upon the death of the wife.

Before discussing this question, we think it well to take notice of the fact that much of the testimony as to these transactions was supplied by the Plaintiff, whom the defendants say, under Sec. 90.05 of Florida Statutes, 1941, F.S.A.,[3] could not be examined as a witness in regard to any transaction or communication between himself and the deceased in order to establish a claim against, or interest in, the property of the decedent. The Supreme Court of Florida has held that the statutory disqualification of Sec. 90.05, Fla. Stat., 1941, F.S.A., may be waived either by the giving of testimony by opposing parties on the subject, or by any other conduct on the part of the class protected by the statute, clearly indicating that they, knowing their rights under the statutes, wished to waive the protection afforded thereby. See Rich v. Hunter, 135 Fla. 309, 185 So. 141. When Defendants introduced Exhibit C, which was a statement written by Mr. Riley on September 6, 1937, objection was made to its introduction unless the Plaintiff were to be accorded the right to explain the matters and things therein. The Court admitted the document and thereupon held that the introduction of same was a waiver of the bar of the statute. We accept this ruling of the lower Court and agree that Mr. Riley was not disqualified to give testimony in explanation or rebuttal of the matters thus put in evidence by the Defendants. Considerable documentary evidence, as well as testimony of disinterested parties, was admitted which in no wise came within the prohibitions of the statute. We will not undertake to segregate and separately dis-

---

[3] Sec. 90.05, Fla.Stat., 1941, F.S.A., is as follows:

"No person, in any court, or before any officer acting judicially, shall be excluded from testifying as a witness by reason of his interest in the event of the action or proceeding, or because he is a party thereto; provided, however, that no party to such action or proceeding, nor any person interested in the event thereof, nor any person from, through, or under whom any such party, or interested person, derives any interest or title, by assignment or otherwise, shall be examined as a witness in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic, against the executor, or administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or the assignee or committee of such insane person or lunatic; but this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, devisee, survivor or committeeman shall be examined on his own behalf, or as to which the testimony of such deceased person or lunatic shall be given in evidence."

cuss the rulings of the Court on the evidence, but will assume that he based his findings of fact on only the evidence that was competent.

The lower Court thought that because the furnishings for the hotel were billed to Adobar, and were paid for by checks on Adobar and by funds supplied by both the husband and wife, an estate by the entireties was thus created in such furniture, and, therefore, the title to all of the furniture—other than some that was admittedly the separate property of one or the other—passed to the Plaintiff as survivor in such estate by the entireties.[4]

■ An estate by the entireties in personal property can exist in Florida, according to the decisions of its Supreme Court, Bailey v. Smith, 89 Fla. 303, 103 So. 833,[5] but no decision of that Court nor statute of the State prescribes the procedure by which an estate by the entireties in personal property may be created. The statement "the acquisition of property by and in the names of both husband and wife" plus an intent to create such an estate, seems to be about all that has been written by the State Court on the subject. See Bailey v. Smith, supra.

An estate by the entireties in real estate may be created by a properly executed conveyance to the husband and wife when there is shown no intent to create a tenancy in common. See: Bailey v. Smith, supra; Menendez v. Rodriguez, 106 Fla. 214, 143 So. 223; Matthews v. McCain, 125 Fla. 840, 170 So. 323; Knapp v. Fredricksen, 148 Fla. 311, 4 So.2d 251.

■ We would have no difficulty in sustaining an estate by the entireties in personal property if it had been evidenced by a bill of sale to the husband and wife,

as such, and where there was evidenced the requisite intent to create such an estate, but we are not convinced that the mere purchase of personal property out of a joint bank account of the husband and wife, and from contributions from each out of their separate funds, plus the facts that the furniture was billed to Adobar and that some of the invoices were made out to Mr. and Mrs. Riley, were sufficient, in the absence of any showing of any specific intent, to set up an estate by the entireties in such furniture. It is true that the title to personal property may pass by delivery, but there must also be an intent to create an estate by the entireties, and such intent ought to be made clearly to appear since upon the decease of one spouse the survivor would become the sole and complete owner of the property to the exclusion of the children and creditors. We do not believe that an estate by the entireties was shown to have been created in the furnishings of the hotel.

■ We agree with the lower Court that there was no proof of the creation of an estate by the entireties in the real estate.

The next question presented for a declaration of the rights of the parties is whether or not the Plaintiff would have been entitled to a homestead in his equity in the Adobar Hotel property, and, if so, what the effect would be upon the rights of the parties here. It is without dispute that upon the completion of the hotel Mr. and Mrs. Riley made their home there until the death of the testatrix, and that the real estate upon which the hotel was located comprised less than one-half acre of land. It is also shown that Mr. Riley claimed and secured from the taxing authorities of Dade County a homestead exemption to the extent of $5,000.00 upon the

---

[4] In the event of the creation of an estate by the entireties, the surviving spouse would take an estate in fee simple free and clear of all claims and creditors of the deceased. See Hall v. Roberts, 146 Fla. 144, 1 So.2d 579; Ohio Butterine Co. v. Hargrave, 79 Fla. 458, 84 So. 376.

[5] "Under the law in force in this state there may be a tenancy by entireties in

both real and personal property; and whether such an estate exists as the result of the acquisition of property by and in the names of both husband and wife must be determined by a consideration of the nature and terms of the transaction as portraying the intent of the parties and of the rules of law applicable thereto. 1 Tiffany on Real Prop. (2d Ed.) p. 646." Bailey v. Smith, 103 So. 833, text 835.

hotel, and that this exemption continued after the death of the testatrix. The appropriate sections of the Florida Constitution defining homesteads and their exemptions are set out in Footnote 6 below.[6]

Those sections make it obvious that the exemption of a homestead from seizure and sale for debts is quite a different thing from the exemption to the extent of $5,000.00 of a homestead from taxation, and that a homestead as defined for tax purposes is not necessarily a homestead that is non-devisable. Under Sections 1 and 2 of Article X, F.S.A. the homestead may have any value, and in addition to the exemption of the dwelling and the land of the homestead from execution there is also exempt to the head of a family personal property in the amount of $1,000.00 as well as the improvements on the real estate. The exemptions of Sec. 1 of Art. X inure to the widow and heirs. Under the tax exemption provision the homestead is not required to be owned by the head of a family but he may own only an interest or an equity in the property;[7] and several owners, if they reside on the property, may have the $5,000.00 exemption divided between them in proportion to their interest in the property. The exemption cannot exceed $5,000.00 in any event. The tax exemption may be given to one who is not the head of a family, if he resides on the real estate in good faith, or if he makes the same the permanent home of others legally or naturally dependent upon him. There is no exemption of personal property under the tax exemption provision of the Constitution.

The fact, therefore, that the allowable exemption from taxes was granted by Dade County to real estate standing in the name of the wife, does not, of itself, convert the hotel into a homestead as defined in Sections 1, 2, and 4 of Article X. Neither would the fact that the husband—who here was the head of the family—owned an equitable interest in the place where he and his wife abide, make him the owner of such part of the proper-

---

[6] Sec. 1 of Art. X of the Constitution of Florida defined the homestead as follows:

"A homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists. * * * The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner; * * *."

Sec. 2 of Art. X provides:

"The exemptions provided for in section one shall inure to the widow and heirs of the party entitled to such exemption, and shall apply to all debts, except as specified in said section."

Sec. 4 of Art. X provides in part:

"Nothing in this Article shall be construed to prevent the holder of a homestead from alienating his or her homestead * * * nor if the holder be without children to prevent him or her from disposing of his or her homestead by will in a manner prescribed by law."

Sec. 7 of Art. X provides:

"Every person who has the legal title or beneficial title in equity to real property in this State and who resides thereon and in good faith makes the same his or her permanent home, or the permanent home of another or others legally or naturally dependent upon said person, shall be entitled to an exemption from all taxation, except for assessments for special benefits, up to the assessed valuation of Five Thousand Dollars on the said home and contiguous real property as defined in Article 10, Section 1, of the Constitution, * * *. Said title may be held by the entireties, jointly or in common with others, and said exemption may be apportioned among such of the owners as shall reside thereon, as their respective interests shall appear, but no such exemption of more than Five Thousand Dollars shall be allowed to any one person or any one dwelling house, nor shall the amount of the exemption allowed any person exceed the proportionate assessed valuation based on the interest owned by such person."

[7] A bachelor residing alone in a residence that he owns is allowed tax exemption but no exemption from forced sale, nor is he restricted in making a devise thereof. See "Our Legal Chameleon" (Crosby & Miller), Vol. II, Fla.Law Review, p. 12.

ty as was the separate property of the wife. Nor does the fact that the husband's equitable interest in the place of abode of himself and family is exempt from sale under execution, as held in the case of Bessemer Properties, Inc., v. Gamble, 158 Fla. 38, 27 So.2d 832, confer upon the husband title to that part of such place of abode which is admittedly the separate property of the wife. See also Pasco v. Hartley, 73 Fla. 819, 75 So. 30. We are aware of no provision in the Constitution or the law that gives to the husband title to the separate property of the wife merely because such separate property is an interest less than entire in the place of abode of the family. By the same token, the husband would not lose any legal or equitable interest in the family domicile, if any he had, upon the death of the wife.

In Nelson v. Franklin, 152 Fla. 694, 12 So.2d 771, Nelson and his wife moved to the home of the wife where they lived until her death. Thereupon Nelson, as the surviving husband, brought suit for partition and division of this home. He predicated his right to partition on the ground that his wife was head of the family, and that the home in question was the homestead of the family and could not be alienated by will or deed, and that it descended to him and the son of his wife equally. In disposing of the case the Court said:

"The Chancellor rejected these contentions. It is quite true that the wife may in fact be the head of the family in which event she could not by will or otherwise alienate the homestead but in this case no such showing is made. The home in question was the separate property of Etta Franklin Nelson, was owned by her and her former husband by the entireties, and she was at liberty to will it to the son of that marriage. We do not overlook the fact that homestead exemption was claimed in the home in question and in the home of appellant where they first lived, but that did not affect the status of the properties. Appellant was the head of the family and was living in the wife's house at the time of her death."

There is no question in the present case but that Mr. Riley, the husband, was the head of the family and that consequently the separate property of Mrs. Riley was not homestead property of the head of a family within the purview of Section 4 of Art. X of the Constitution. (See Footnote 6.)

Mrs. Riley had no children of her own and, under Sec. 4 of Art. X, as construed by Nelson v. Franklin, supra, there was nothing to prevent her from disposing of her part of the homestead by will.

In the Gamble case, supra [158 Fla. 38, 27 So.2d 833], the Court said:

"It is not disputed that the parties were residing on the property; that it was in the State of Florida; that the wife was a free dealer and held title to the property, and that the husband made the contributions claimed to have been made. * * *

"There is no question that Gamble was the head of a family and that his contributions to his wife's separate property gave him an equitable interest on the basis of which he could claim his homestead exemption. It was not essential that he hold the legal title to the land.

"This court has also held that a one-half interest, the right of possession, or any beneficial interest in land gave the claimant a right to exempt it as his homestead. Morgan v. Bailey, 90 Fla. 47, 105 So. 143; Hill v. First National Bank, 73 Fla. 1092, 75 So. 614; Coleman v. Williams, 146 Fla. 45, 200 So. 207."

In view of the holdings in Nelson v. Franklin, supra, we conclude that the Gamble case, supra, was merely definitive of the right of the head of a family who held an interest in the homestead to the exemption of the homestead because of such interest. The opinion did not hold that he thereby achieved a muniment of title to the entire estate but merely that he had an equitable interest that was sufficient, as a matter of defense, against the execution. The statement, however, that his contributions to his wife's separate property wherein he and his family resided gave him an equitable interest in such property on the basis of which he could claim his homestead exemption, has a significant bearing on this case as we shall now demonstrate.

We have held that there was no estate by the entireties created in this hotel real estate; that the title to the wife's separate property in the hotel did not inure to him under Secs. 1, 2, or 4, of Art. X; and that he did not acquire it by any right of election under the will that gave him only a portion of the income from her property which she directed be set up as a trust.

It is necessary, in view of the holding in the Gamble case, supra, that the husband, because of his contributions to the purchase of the wife's separate property, acquired an equitable interest therein, that we now concern ourselves with the question of whether or not, under the facts and circumstances of this case, equity should set up or declare a trust in the real and personal property of the hotel, and in the account in the bank, in favor of the husband to the extent that the equitable interest created by any contributions of money made by him in the acquisition of the hotel real estate, the construction of the hotel, the acquisition of the furnishings, and the payment of obligations occasioned by the acquisition and construction of such property, bears to the total, or to the proportion of the contributions that his wife made toward the acquisition, construction, furnishing, and financing of the said hotel.

Concededly both Mr. and Mrs. Riley contributed cash to the joint enterprise of acquiring and equipping the Adobar Hotel. It appears beyond dispute that had it not been for the law practice of Mr. Riley, the cash derived therefrom, the contributions made by him, and his efforts in financing and staving off foreclosure or bankruptcy, the joint enterprise could not have succeeded, and it is necessary for the Court to determine whether, in the absence of any proven intent on the part of Mr. and Mrs. Riley to create a trust; or in the absence of any evidence of an agreement that she would take the title in her name but hold it in trust for both of them; or in the absence of proof of actual fraud, duress, or mistake; a court of equity should now declare a resulting trust or should set up a constructive trust in order to prevent inequity to the husband and unjust enrichment of others who have no legal right to his bounty.

A resulting trust arises where a transfer of property is made under circumstances which raise an inference that the person making the transfer or causing it to be made did not intend the transferee to have the beneficial interest in the property transferred.

A constructive trust is imposed not because of the intention of the parties but because the person holding title to the property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. See Restatement of the Law of Trusts, Vol. 2, p. 1249; also, Restatement of the Law of Restitution, Quasi Contracts, and Constructive Trusts, Sec. 160, p. 640.

"A constructive trust does not, like an express trust, arise because of a manifestation of an intention to create it, but it is imposed as a remedy to prevent unjust enrichment." Sec. 160, Restatement of the Law of Restitution, Quasi Contracts, and Constructive Trusts.

"An express trust is a substantive institution. A constructive trust, on the other hand, is purely a remedial institution." Dean Pound, in 33 Harvard Law Review, 420.

In Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378, 380, the conception of an equitable trust as a remedy was aptly stated by Judge Cardozo:

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."

The same author, in Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 548, 62 A.L.R. 1, said:

"A constructive trust is, then, the remedial device through which preference of self is made subordinate to loyalty to others."

See also Citizens' State Bank v. Jones, 100 Fla. 1492, 131 So. 369.

In the Restatement of the Law of Restitution, Quasi Contracts, and Constructive Trusts, page 640, it is stated that:

"Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.

\* \* \* \* \* \*

"Where property is held by one person upon a constructive trust for another, and the former transfers the property to a third person who is not a bona fide purchaser, the interest of the beneficiary is not cut off."

"Persons who engage in a joint adventure are in a fiduciary relation to each other." Restatement of the Law of Restitution, Quasi Contracts, and Constructive Trusts, Sec. 166(d), p. 676.

In Nuveen v. Board of Public Instruction, 88 F.2d 175, this Court, in a case involving neither fraud nor duress nor intention to create a trust but merely a mistake as to the law, held that equity should raise up a constructive trust in favor of the purchaser of the bonds subsequently declared illegal in proportion to the contributions made by the purchaser to the cost of the school building.

In Texas Co. v. Miller, 165 F.2d 111, 116, we approved a statement from Texas Jurisprudence that:

"Whenever one person has obtained money which does not equitably belong to him, and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it, a constructive trust will arise, whether the money came into the possession of such person by accident, mistake or fraud; \* \* \* \*"

and that a constructive trust is:

"a trust that is impressed on property, without regard to the intention of anyone, in order that the owner may be held to account as trustee and that the property may be followed in the hands of third persons who are not innocent purchasers."

In Pomeroy's Eq.Juris., vol. 3, p. 2397, Sec. 1051, it is stated that:

"A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form. \* \* \* It is not essential for the application of this doctrine that an actual trust or fiduciary relation should exist between the original wrongdoer and the beneficial owner. Whenever one person has wrongfully taken the property of another, and converted it into a new form, or transferred it, the trust arises and follows the property or its proceeds."

The Supreme Court of Florida has made similar definitions of a constructive trust. In Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 422, 54 A.L.R. 1173, it is said:

"A constructive trust is one raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it. Constructive trusts arise purely by construction of equity, independently of any actual or presumed intention of the parties to create a trust, and are generally thrust on the trustee for the purpose of working out the remedy. They are said to arise from actual fraud, constructive fraud, and from some equitable principle independent of the existence of any fraud."

In Semple v. Semple, 90 Fla. 7, 105 So. 134, 136, the Supreme Court of Florida said that:

"A constructive trust arises entirely by operation of law, without reference to any actual or supposed intention of creating a trust, and often directly contrary to such intention."

In Smith v. Smith, 143 Fla. 159, 196 So. 409, the Court held that constructive trusts were applicable to cases where property was obtained without fraud but retained inequitably. See Fickling Property v. Smith, 123 Fla. 556, 167 So. 42.

In Fisher v. Grady, 131 Fla. 1, 178 So. 852, 861, the Supreme Court of Flor-

ida approved the quotation from Perry on Trusts, 6th Edition, paragraph 166, page 260, as follows:

"If a person obtains the legal title to property by such arts or acts or circumstances of circumvention, imposition, or fraud, or *if he obtains it by virtue of a confidential relation, and influence under such circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery,* to hold and enjoy the beneficial interest of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust by construction out of such circumstances or relations; and this trust they will fasten upon the conscience of the offending party and will convert him into a trustee of the legal title, and order him to hold it or to execute the trust in such manner as to protect the rights of the defrauded party and promote the safety and interests of society. Such trusts are called *constructive* trusts. They differ from other trusts in that they are not within the intention or contemplation of the parties at the time the contract is made from which they are construed by the court, but they are thrust upon a party contrary to his intention and against his consent. The reason is that courts of equity have a large jurisdiction over all matters of trust and confidence. They control and direct their administration, and in certain cases they annul and put an end to them by directing the trustee to convey the trust property to the person beneficially interested." (Emphasis added.)

■ It is our view that a resulting trust is a *status* that automatically arises by operation of law out of certain circumstances, while a constructive trust is a *remedy* that equity applies in order to prevent injustice or in order to do justice.

■ As did the lower Court, we think that it would be unjust, under the facts and circumstances of this case, to allow the equitable interest that the husband acquired by his contributions to the acquisition of the hotel, its real estate, and its furnishings,[8] to be retained by the transferees or devisees to their unjust enrichment.

We hold, therefore, that equity should set up a constructive trust in the property of the joint adventure—the real estate, the hotel, and the furnishings—in the proportion that Mr. and Mrs. Riley each contributed their separate funds in the buying, constructing, and paying for such properties; that the beneficial interest of each cestui que trust shall be undiminished by any withdrawals of funds by either of the parties, but subject to a duty to return to the trust or to the other beneficiary such amounts withdrawn from earnings as is necessary to afford to the other beneficiary equality of treatment as to cash withdrawals, and that in order to secure the discharge of such obligation so to refund, an equitable lien should be declared upon the beneficial interest of any beneficiary in such trust who may have drawn sums from the trust estate in excess of the proportion to which he or she would have been entitled.[9] In short, the withdrawals should be considered as distributions of income rather than as reductions of beneficial interest.

■ We believe the will of Mrs. Riley to be valid and binding as to any of her separate property or as to any of her property of which she was the beneficial owner, including her interest in the constructive trust estate here declared and set up, and any identifiable funds of the joint adventure or such trust that were not a part of an equitable or proportionate distribution of either corpus or income.

■ The lower Court held that the $17,947.20 in the Adobar account in the Miami Beach First National Bank con-

---

8 Nuveen v. Board of Public Instruction, supra; Bessemer Properties, Inc. v. Gamble, supra.

9 The evidence seems to indicate that Mrs. Riley withdrew funds from the joint adventure considerably in excess of the proportion that she would have been entitled to withdraw under the conclusion which we have reached, as to which, or the amount of which, we undertake to make no adjudication but leave the matter for the adjudication of the Court below to be made in accordance with the law here announced.

stituted a trust fund. We agree that such funds in the bank in this account as were earnings of the joint adventure are a part of the constructive trust herein set up, to which Mr. Riley is entitled to share in proportion to his interest as hereinabove defined, but we cannot agree with the holding of the lower Court that Mr. Riley would be entitled to the entire account, unless to equalize withdrawals.

In a decree to be rendered by the lower Court it will be necessary for it to ascertain—either from the evidence now in the record or from such further inquiry as to it shall seem proper—the proportion that Mr. Riley contributed toward the joint adventure hereinabove outlined and thereupon to declare the Plaintiff to be a beneficiary in the constructive trust to the extent so found. As stated aforesaid, the interest or proportion of Mrs. Riley in such constructive trust, and, therefore, the interest or proportion passing by her will, should be the amount of her contributions from her separate estate to the acquisition of the hotel, its furnishings, and real estate, undiminished by any withdrawals of income, but subject to the duty to restore such withdrawals to the trust or to pay over to Mr. Riley such sum as is necessary to accord to him withdrawals of equal proportion to his beneficial interest in the trust hereby set up.

We agree with the holdings of the lower Court that Mr. Riley did not have an election, either under the law or under the will, to renounce the will or to take under the laws of descent and distribution of the State of Florida. An attempt to make an election when no election is available is without legal significance. See Nuveen v. Board of Public Instruction, 88 F.2d text 180. We consider the right of election and the right of renunciation to be concomitant. The effort by Mr. Riley was to elect and to renounce, not merely to renounce. Having no election he, therefore, did not forfeit his right to the benefits or income provided in the will of Mrs. Riley under the trust set up by her in her will.

The decree of the Court below is affirmed in part, modified in part, and remanded to the lower Court for the application of the legal and equitable principles to the facts found or to be found by the lower Court, and for the making of such further orders of the Court touching the management, distribution, partition, or division of the property [10] of the constructive trust as it shall deem to be for the best interest of all parties concerned.

---

[10] In the Nuveen case, supra, it was held that [88 F.2d 79]:

"A court of equity after decreeing the interests of the several parties can order a sale for partition, but should do so only after a reasonable opportunity for the parties so to adjust their rights as to avoid embarrassment to the public school."

It would seem appropriate that the parties here should be given opportunity to adjust their rights and equities so as not to interfere with the proper and profitable operation of the hotel.